**Antonio Flor CHANCO; Maria Ofelia San Miguel Chanco, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–70738.

United States Court of Appeals, Ninth Circuit.

Submitted March 12, 1996. *

Decided April 19, 1996.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Fed. R.App.

P. 34(a); 9th Cir. R. 34–4.

Bert M. Vega and Rodel E. Rodis, San Francisco, California, for the petitioners.

David V. Bernal, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Antonio Flor Chanco ("Chanco") and Maria Ofelia San Miguel Chanco, natives and citizens of the Philippines, petition for review of an Order of the Board of Immigration Appeals (BIA), which affirmed the Immigration Judge's (IJ) denial of the Chancos' request for asylum and withholding of deportation under 8 U.S.C. § 1158(a) and 1253(h).[1] Chanco argues the BIA abused its discretion by determining that his fear of prosecution by the Philippine government for his participation in a coup d'etat is not a well founded fear of persecution for his political opinion. He also contends he will be subjected to disproportionate punishment because of his family's friendship with the Marcos family, and that his nine-year service in the military renders him particularly subject to persecution by rebel forces in the Philippines.

We have jurisdiction under 8 U.S.C. § 1105a(a). We deny review because what Chanco faces is not persecution but prosecution for his crime against the Philippine government, a crime for which he has not shown his punishment will be disproportionate. We also conclude that because Chanco has failed to show that he would be singled out for retribution by the rebels, his fear of persecution by them is not well founded.

FACTS

Chanco is a lieutenant commander in the Philippine Navy and was a member of the Reformed Armed Forces Movement (RAM), an officers group which helped oust President Ferdinand Marcos and install the government of Corazon Aquino. Some RAM members later became disenchanted with the new government and, in August 1987, Chanco and others covertly helped plan a military coup against Aquino. The rebellion was defeated before Chanco took an active role, and military officials were unaware of his involvement when they dispatched him to Hawaii a few weeks later as a representative of the Philippine Navy.

While in Hawaii, Chanco visited Ferdinand Marcos to deliver a letter from Chanco's father, a longtime friend of the former president. Although Chanco had permission to make the visit, he contends it prompted military officials to link him to the coup plotters, whom Marcos was suspected of financing.

After completing his work in Hawaii, Chanco received permission to visit friends in the continental United States. During this visit, Chanco learned he had been implicated in the coup plot and would likely face prosecution upon his return. Fearing lengthy imprisonment, he applied for asylum.

The BIA denied Chanco's request for asylum, determining he failed to satisfy his required burden to show by credible, direct and specific evidence facts supporting a well founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Ramos–Vasquez v. I.N.S.*, 57 F.3d 857, 862 (9th Cir.1995). Because the standard for withholding deportation is higher than for granting asylum, the BIA also denied Chanco's request for withholding of deportation. *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

DISCUSSION

A. Standard of Review

We review for abuse of discretion a denial of asylum. *Ramos–Vasquez*, 57 F.3d at 861. We review the factual findings underlying the determination under a "substantial evidence" standard. *Shirazi–Parsa v. I.N.S.*, 14 F.3d 1424, 1427 (9th Cir.1994). We will uphold the BIA's determination unless the evidence compels a contrary conclusion. *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 816–17, 117 L.Ed.2d 38 (1992); *Shirazi–Parsa*, 14 F.3d at 1427.

B. Denial of Asylum

To qualify for asylum, the alien must show he [or she] is a statutory 'refugee,' by providing evidence of 'persecution or a

---

1. Because the facts supporting the Chancos' claims pertain to Antonio Flor Chanco, we refer to him in this opinion as "Chanco." The Chancos do not address in their appeal, and therefore have waived, their contention before the BIA that Maria Ofelia San Miguel Chanco's claim should be considered independently from her husband's claim.

well-founded fear of persecution on ac-
count of race, religion, nationality, mem-
bership in a particular social group, or
political opinion.'

*Ramos–Vasquez,* 57 F.3d at 862 (citing *Car-
doza–Fonseca,* 480 U.S. at 423, 107 S.Ct. at
1208) quoting 8 U.S.C. § 1101(a)(42).

█ The first basis on which Chanco seeks
asylum is his claim that the military disci-
pline and criminal prosecution he faces for
planning the 1987 coup constitute persecution
on account of his political opinion. As to this
claim, the BIA concluded Chanco did not face
persecution qualifying him for refugee status,
but rather prosecution for his part in an
unsuccessful coup d'etat. We agree.

█ Persons avoiding lawful prosecution
for common crimes are not ordinarily
deemed refugees. *Abedini v. U.S. I.N.S.,*
971 F.2d 188, 191 (9th Cir.1992). Partic-
ipation in a coup may be distinguished from
common crimes, however, in that it is usually
a politically motivated act. Consequently, we
must look beyond *Abedini* for an appropriate
rule. Because the significance of coup par-
ticipation to refugee status presents a ques-
tion of first impression in this circuit, we
consider the decisions of courts in other cir-
cuits, as well as international treaties to
which the United States is a party.

In finding Chanco ineligible for asylum,
the BIA cited the United Nations' *Handbook
on Procedures and Criteria for Determining
Refugee Status: Under the 1951 Convention
and the 1967 Protocol Relating to the Status
of Refugees,* Geneva: Office of the United
Nations High Commissioner for Refugees,
1979 (hereinafter the *"UNHCR Hand-
book"*).[2] The relevant paragraph distin-
guishing persecution on account of political
opinion from prosecution for politically moti-
vated crimes advises:

If the prosecution pertains to a punishable
act committed out of political motives, and

if the anticipated punishment is in con-
formity with the general law of the country
concerned, fear of such prosecution will not
in itself make the applicant a refugee.

*UNHCR Handbook* at paragraph 84.

█ Although fear of prosecution for a
politically motivated crime does not in itself
make an applicant a refugee, the *UNHCR
Handbook* and some courts have recognized
additional circumstances, which when com-
bined with prosecution for a politically moti-
vated crime, may constitute persecution.[3]
Factors bearing on whether a political of-
fender can be considered a refugee include
"the nature of the law on which the prosecu-
tion is based." *UNHCR Handbook* at para-
graph 86, cited in *Dwomoh v. Sava,* 696
F.Supp. 970 (S.D.N.Y.1988); *see also Perko-
vic v. I.N.S.,* 33 F.3d 615 (6th Cir.1994);
*Perlera–Escobar v. Executive Office for Im-
migration,* 894 F.2d 1292 (11th Cir.1990).

In *Dwomoh,* the district court considered a
habeas corpus petition by a Ghanian soldier
who sought asylum to avoid deportation and
possible execution for participating in an at-
tempted coup against the Ghanian military
government. *Dwomoh,* 696 F.Supp. at 972.
Citing the United States' long-standing tradi-
tion of granting refugee status to persons
resisting totalitarian regimes, as well as in-
ternational agreements extending refugee
status to opponents of totalitarian rulers, the
*Dwomoh* court held that,

[I]n countries where there is no procedure
by which citizens can freely and peacefully
change their laws, officials or form of gov-
ernment ... a coup attempt is a form of
expression of political opinion the prosecu-
tion of which can qualify as 'persecution'
within the statutory definition of 'refugee.'

*Id.* at 979.

In *Perkovic,* the Sixth Circuit examined
the link between a nation's tolerance of dis-

---

**2.** Although the *UNHCR Handbook* is not binding
on the I.N.S., it has been cited by the Supreme
Court as providing significant guidance for con-
struing the United Nations Protocol Relating to
the Status of Refugees, 19 U.S.T. 6223, T.I.A.S.
No. 6557, to which the United States is a party
and which Congress relied on in enacting United
States refugee law. *Ramos–Vasquez,* 57 F.3d at
863 (citing *Cardoza–Fonseca,* 480 U.S. at 437–39,
107 S.Ct. at 1216–17).

**3.** Addressing a somewhat analogous issue, we
have held that prosecution for a crime can con-
stitute persecution, when the underlying law
being enforced is contrary to internationally ac-
cepted principles of human rights. *Ramos–Vas-
quez,* 57 F.3d at 863 (Honduran soldier who
deserted to avoid participating in military
atrocities may contend he faced persecution on
account of political opinion).

sent and an alien's refugee status, and stated:

> Although international law allows sovereign countries to protect themselves from criminals and revolutionaries, it does not permit the prohibition and punishment of peaceful political expression and activity, the very sort of conduct in which the petitioners engaged here.

*Perkovic,* 33 F.3d at 622.

In *Perlera–Escobar,* the Eleventh Circuit held that sovereign nations have a recognized right to investigate suspected enemies of the government. *Perlera–Escobar,* 894 F.2d at 1297, 1299. Such investigation does not constitute persecution on account of political opinion, when the government is "duly established." *Id.* at 1299.

█ These cases recognize that the fear of prosecution must be evaluated in the context of the legitimacy of the law being enforced. When a government does not respect the *internationally recognized human right to peacefully protest,* punishment by such a government for a politically motivated act may arguably not constitute a legitimate exercise of sovereign authority and may amount to persecution. But that is not the case before us. We need not decide in this case whether a coup plotter against a regime which prohibited peaceful protest or change would be entitled to asylum.

Here, the record shows that diverse political views are tolerated in the Philippines, and Chanco could have expressed his political opinion without resort to a violent attempt to overthrow the democratically elected government. Because lawful means, as an alternative to a coup d'etat, were available, the BIA reasoned the prosecution Chanco faces is not on account of his political opinion but on account of his illegal action.

Although the BIA did not cite *Dwomoh* in denying Chanco asylum, the Board's reasoning is consistent with *Dwomoh.* The BIA observed that,

Peaceful means for expressing [Chanco's] political opinion and effecting a change in the government without the prospect of punishment were available.

We conclude the BIA did not err by determining that the punishment Chanco faces does not constitute persecution on account of political opinion. Prosecution for participation in a coup does not constitute persecution on account of political opinion when peaceful means of protest are available for which the alien would not face punishment. Prosecution in these circumstances is no different from prosecution for a common law crime. *See Abedini,* 971 F.2d at 191.

█ Although prosecution for a common law crime will not ordinarily constitute persecution, a showing of disproportionate punishment may support a claim that the prosecution is a pretext for persecution on account of political opinion. *Id.*[4] In the present case, Chanco argues the prosecution he fears is a pretext for his persecution on account of his political opinion because of the disproportionately severe punishment he will receive due to his imputed support for the Marcos family.

Even if we assume disproportionately severe punishment might indicate pretextual prosecution, Chanco's argument fails because he did not present evidence to support his contention that he faces disproportionate punishment. To the contrary, he testified he expects the same punishment as other coup plotters.

█ Chanco's final contention is that he has a well founded fear of persecution from anti-government forces, because of his nine years of military service fighting the rebels.

To the extent Chanco expects to be targeted as a current member of the military, the BIA properly found that this danger does not constitute persecution on account of political opinion or membership in a particular social group. *Matter of Fuentes,* 19 I & N Dec. 658, 661 (1988) (dangers faced solely due to one's employment as a "national police officer" and U.S. Embassy guard do not constitute persecution on account of the protected grounds enumerated in the Immigration and

---

**4.** The *UNHCR Handbook* also recognizes that excessive or arbitrary punishment for a politically motivated offense may indicate prosecution for political purposes. *Id.* at paragraph 85.

Nationality Act). To the extent Chanco expects to be expelled from the military and fears rebel attacks due to his status as a former military officer, Chanco is correct that reprisals against former military officers can provide a basis for granting asylum. *Montecino v. I.N.S.,* 915 F.2d 518, 520 (9th Cir.1990). However, the BIA properly found Chanco failed to meet his burden of proof, which requires evidence that he is likely to be singled out for rebel attacks. *Arriaga–Barrientos v. U.S.I.N.S.,* 937 F.2d 411, 414 (9th Cir.1991) (Violence must create a pattern of persecution closely tied to petitioner); *see also, Kotasz v. I.N.S.,* 31 F.3d 847, 852 (9th Cir.1994).

## CONCLUSION

Chanco failed to establish that he has a well founded fear of persecution within the meaning of the Immigration and Nationality Act. Having failed to establish a well founded fear of persecution, he necessarily failed to surmount the higher standard to establish a "clear probability" of persecution which is required for withholding of deportation. *Ramos–Vasquez,* 57 F.3d at 862. The petition for review is

DENIED.