Miguel **CRUZ–NAVARRO**, Graciela **Egoavil–Valenzuela,** and **Sergio Brian Cruz–Egoavil, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

**No. 99–70150.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 2000

Filed Nov. 15, 2000

Karla L. Kraus, San Diego, California, for the petitioners.

William J. Howard, U.S. Department of Justice, Washington, D.C., for the respondent.

Before: BOOCHEVER, TASHIMA, and TALLMAN, Circuit Judges.

TASHIMA, Circuit Judge:

Miguel Cruz–Navarro ("Cruz"), a native and citizen of Peru, with his family,[1] petitions for review of an order of the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of the Immigration Judge ("IJ"), denying Cruz both asylum and withholding of deportation under §§ 208(a) and 243(h) of the Immigration and Nationality Act ("INA"). The BIA found that Cruz had not established that he was persecuted "on account of" a category protected under the INA when members of a guerilla group attempted to kill him.

We have jurisdiction under § 106(a)(1) of the INA, 8 U.S.C. § 1105a(a)(1), as amended by the transitional rules for judicial review under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 3009 (Sept. 30, 1996).[2] We deny the petition.

## I. BACKGROUND

Petitioners are citizens and natives of Peru.[3] Cruz was a member of the Peruvian Marines from 1976 to 1977. After his service with the Marines, Cruz joined the Peruvian Civil Guard, which later became the National Police, serving from 1980 to 1989. While a member of the National Police, Cruz served in Iquitos, Ayucucho, and Lima.

1. Cruz's wife, Graciela Egoavil–Valenzuela, and their son, Sergio Brian Cruz–Egoavil, are dependent asylum applicants; thus, disposition of Cruz's asylum claim is dispositive as to his family as well.

2. Because the BIA issued its decision in this case on January 14, 1999, and Cruz's deportation proceedings began on November 1, 1991, § 106 of the INA, as amended by IIRIRA's transitional rules, applies. *See* IIRIRA § 309(c)(4); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997) (applying transitional rules to all final orders of deportation issued by the BIA on or after October 31, 1996, in

cases where the applicant was placed in proceedings before April 1, 1997). Under the transitional rules, IIRIRA § 309(c)(4)(C) provides that "the petition for judicial review must be filed not later than 30 days after the date of the final order of exclusion or deportation." The BIA entered its final order on January 14, 1999. Cruz's petition for review was timely filed on February 12, 1999, within the 30–day period.

3. Cruz also has an eight-year-old son, who was born two years after the family entered the United States, and who is a United States citizen.

Throughout his tenure with the National Police, Cruz often arrested and searched the homes of members of terrorist groups, such as the Sendero Luminoso ("Shining Path"), an anti-government guerilla organization.[4] The Sendero Luminoso was especially active in Ayucucho, the town where Cruz was stationed from 1986 to 1987. Because police officers serving in Ayucucho were specifically targeted by the Sendero Luminoso, and a large proportion of them died or disappeared at the hands of the group,[5] such officers were popularly referred to as "dead men."

In April 1989, while stationed in Lima, Cruz encountered three men outside a telephone booth. Cruz knew one of the men and suspected that the three were Sendero Luminoso guerillas. His suspicions were further piqued when he observed that one man held two or three hand grenades and another carried a cloth bag, which Cruz suspected contained weapons. Although Cruz was dressed in civilian clothing and unarmed, his acquaintances among the guerillas knew he was a member of the National Police. This man made eye contact with Cruz and smiled. Afraid of the armed men, Cruz hurried home.

After Cruz arrived at his home, he was notified by his brother that three terrorists had been arrested near the pay phone where Cruz saw the three armed men. Cruz later discovered that the three terrorists escaped. A few weeks later, Cruz's mother was warned that Sendero Luminoso believed Cruz "ratted" on the three men he encountered, leading to their subsequent arrest. She also heard that the Sendero Luminoso guerillas wanted to retaliate against Cruz for his supposed role as an informant.

On May 12, 1989, at approximately 10:00 p.m., while dressed in civilian clothes, Cruz noticed two men following him. Cruz saw one of the men reach into his coat as if he was about to draw a weapon. When Cruz ran, the two men began to fire their weapons at him shouting, "Policeman, you're going to die!" and "you're going to die, you informant, you're going to die." Cruz, however, was able to outrun the guerillas and escaped without harm.

Cruz reported the incident to his command post the next day. He asked the commanding officer for protection against the Sendero Luminoso. The officer informed him that the force would not be able to protect him because he did not hold a high enough rank. Indeed, the officer told him he "would have to protect [his] own life." Cruz then requested that he be allowed to retire from the force, but the request was denied. Fearing for his life, Cruz and his family fled Peru.

Cruz and his family entered the United States without inspection on or about May 30, 1989. The Immigration and Naturalization Service issued orders to show cause to petitioners on November 11, 1991, charging them with deportability pursuant to INA § 142(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (renumbered as INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B)). Petitioners admitted the charges against them, conceded deportability, and applied for political asylum and withholding of deportation pursuant to §§ 208(a) and 243(h) of the INA, and, in the alternative, for voluntary departure pursuant to § 244(e).

The IJ denied Cruz's application for asylum and withholding of deportation, finding that Cruz's testimony was credible, but that he failed to show he was persecuted

---

**4.** Sendero Luminoso is a Maoist guerilla organization, founded around 1980, that opposes the current Peruvian government. Sendero Luminoso commits terrorist acts against both government officials and civilians. *See Gonzales–Neyra v. INS*, 122 F.3d 1293, 1295 (9th Cir.1997) (recognizing the extensive and ongoing impact of Sendero Luminoso); *Velarde v. INS*, 140 F.3d 1305 (9th Cir.1998);

*Meza–Manay v. INS*, 139 F.3d 759 (9th Cir. 1998).

**5.** Cruz testified that approximately 80 percent of the National Police officers stationed in Ayucucho were either killed by Sendero Luminoso guerillas or disappeared under mysterious circumstances.

"on account of" a category protected under the INA. The BIA affirmed, stating that Cruz did not fall under a category protected by the INA because "[i]t is well established that policemen or members of the military are not considered a social group eligible for asylum."

## II. STANDARD OF REVIEW

■■■ We review de novo determinations by the BIA of purely legal questions concerning requirements of the INA. *See Vang v. INS,* 146 F.3d 1114, 1116 (9th Cir.1998). We examine the BIA's factual findings under the substantial evidence standard. *See Marcu v. INS,* 147 F.3d 1078, 1082 (9th Cir.1998) ("Our task is to determine whether there is substantial evidence to support the BIA's finding, not to substitute an analysis of which side in the factual dispute we find more persuasive."), *cert. denied,* 526 U.S. 1087, 119 S.Ct. 1496, 143 L.Ed.2d 650 (1999). Review under the substantial evidence standard allows this court to reverse the BIA's decision only if the evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *see also Borja v. INS,* 175 F.3d 732, 735 (9th Cir. 1999) (en banc).

Moreover, where, as here, "the BIA conducts a de novo review of the record and makes an independent determination about whether relief is appropriate," we review the BIA's decision, rather than the IJ's decision.[6] *De Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997); *see Gonzalez v. INS,* 82 F.3d 903, 907 (9th Cir.1996); *Yepes–Prado v. INS,* 10 F.3d 1363, 1366–67 (9th Cir.1993).

Finally, "where the IJ expressly finds certain testimony to be credible, and where the BIA makes no contrary finding, we 'accept as undisputed' the testimony given at the hearing before the IJ." *Singh*

v. INS, 94 F.3d 1353, 1356 (9th Cir.1996) (quoting *Singh v. Ilchert,* 63 F.3d 1501, 1506 (9th Cir.1995)). Because the testimony presented by Cruz was deemed credible by the IJ, and that credibility finding was not disturbed by the BIA, we accept his testimony as true.

## III. DISCUSSION

Under § 1101(a)(42)(A) of the INA, 8 U.S.C. § 1158(b), the Attorney General may, in her discretion, grant asylum to an applicant determined to be a "refugee." *See Korablina v. INS,* 158 F.3d 1038, 1043 (9th Cir.1998). Refugee status is established by evidence that an applicant is unable or unwilling to return to his or her home country because of past persecution or a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Korablina,* 158 F.3d at 1043; *Singh v. Ilchert,* 63 F.3d at 1505.

### A. Persecution "On Account of" a Protected Category

The BIA determined that Cruz's persecution by Sendero Luminoso guerillas was not "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Cruz does not claim persecution on account of his race, religion, or nationality. Rather, he claims he was persecuted on account of his membership in a particular social group and his political opinion.

### 1. *Membership in a Protected Social Group*

■■■ The BIA stated that "[i]t is well established that policemen or members of the military are not considered a social group eligible for asylum," citing *Matter of*

---

**6.** The BIA also "agree[d] with the [IJ] that the respondent's fear is not well-founded." The IJ's decision, however, was based solely on the finding that Cruz's persecution was not "on account of" a protected category. Thus,

the BIA's decision went beyond a "review" of the IJ's decision. We need not, however, reach this portion of the BIA's decision because we base our opinion on other grounds.

*Fuentes,* 19 I. & N. Dec. 658, 1988 WL 235456 (BIA 1988). In *Fuentes,* the BIA refused to grant asylum to an El Salvadoran police officer because he made no showing that he was persecuted "on account of" a protected category. The BIA there stated, however, that "[i]t is possible that mistreatment occurring because of such a status in appropriate circumstances could be found to be persecution on account of political opinion or membership in a particular social group." *Id.* at 662. *Fuentes,* therefore, does not flatly preclude "police officers and soldiers from establishing claims of persecution or fear of persecution." *Velarde v. INS,* 140 F.3d 1305, 1311 (9th Cir.1998). Rather, *Fuentes* suggests that persecution resulting from membership in the police or military is insufficient, *by itself,* to establish persecution on account of membership in a particular social group or political opinion.

Our cases have also drawn a distinction between *current* and *former* military or police service when determining the scope of a cognizable social group under the INA. Persons who are persecuted because of their status as a former police or military officer, for example, may constitute a cognizable social group under the INA. *See Velarde,* 140 F.3d at 1305 (persecution of a woman because of her former job as the bodyguard to the daughters of then-President Alan Garcia was on account of her membership in a particular social group as well as her political opinion); *Chanco v. INS,* 82 F.3d 298, 302 (9th Cir.1996) ("reprisals against former military officer can provide a basis for granting asylum"); *Montecino v. INS,* 915 F.2d 518, 520 (9th Cir.1990).[7]

■ Persecution occurring because a person is a current member of a police force or the military, however, is "not *on account of* one of the grounds enumerated in the Act. (Race, religion, nationality, membership in a particular social group, or political opinion)." *Aguilar–Escobar v. INS,* 136 F.3d 1240, 1241 (9th Cir.1998)

(holding that persecution of a woman because of her government job or her husband's position as a police officer was not on account of a particular social group) (footnote omitted); *Arriaga–Barrientos v. INS,* 937 F.2d 411 (9th Cir.1991) (persecution of a member of the Guatemalan military because of such status was not on account of his membership in a particular social group under the INA). Substantial evidence, therefore, supports the BIA's finding that Cruz was not persecuted on account of his membership in a particular social group.

### 2. *Political Opinion*

Cruz also claims that Sendero Luminoso guerillas persecuted him "on account of" his political opinion. In *Sangha v. INS,* 103 F.3d 1482, 1488–90 (9th Cir.1997), we held that there are three ways that an applicant can establish a "political opinion." An applicant may show (1) "affirmative political beliefs," (2) "political neutrality in an environment in which political neutrality is fraught with hazard, from governmental or uncontrolled anti-government forces;" or (3) "an imputed political opinion." *Id.* at 1488–89. Cruz contends that he was persecuted on account of his affirmative political opinion and an imputed political opinion.

■ There is little or no evidence in the record that compels a finding that Cruz held an affirmative political belief, much less that he was persecuted for it. Cruz did not testify that he had particular political beliefs or opinions, much less political motives for joining either the marines, the Civil Guard, or the National Police. Indeed, Cruz asked his employer for permission to retire from the National Police. Moreover, Cruz did not choose to be stationed in Ayucucho or work on cases involving the arrest of Sendero Luminoso guerillas. Further, Cruz did not testify that he expressed any of his political beliefs to his persecutors. Substantial

---

7. Cruz does not contend on appeal that former members of the National Police, as a class, are a social group subject to persecution by the Sendero Luminoso.

evidence, therefore, supports the BIA's finding that Cruz failed to establish persecution on the basis of "affirmative political opinion." *See Gonzales–Neyra v. INS,* 122 F.3d 1293, 1296 (9th Cir.1997) (finding affirmative political opinion where applicant provided evidence that (1) he had a political opinion, (2) he expressed the opinion to his persecutors, and (3) the persecutors threatened him after he expressed his opinion).

 Cruz also claims he was persecuted on account of a political opinion imputed to him by the Sendero Luminoso. He argues that Sendero Luminoso terrorists attempted to assassinate him because they imputed pro-government, anti-communist political beliefs to him. He reasons that the Sendero Luminoso identified him as such because he: (1) was a known police officer who regularly arrested and searched Sendero Luminoso members in dangerous zones, such as Lima and Ayacucho; and (2) was believed to have informed the authorities regarding an incident leading to the arrest of three heavily-armed Sendero Luminoso guerillas.[8]

 "An imputed political opinion is a political opinion attributed to the applicant by his persecutors." *Sangha,* 103 F.3d at 1489. We consider, however, "not the persecutor's own political opinions, but rather the political views the persecutor rightly or in error attributes to his victims. If the persecutor attributed a political opinion to the victim, and acted upon the attribution, this imputed view becomes the applicant's political opinion as required under the [INA]." *Id.*

There is no evidence that suggests the Sendero Luminoso persecuted Cruz on account of an imputed political opinion. Indeed, Cruz fails to link his persecution to anything other than his status as a police officer. During their attack, the guerillas referred to Cruz as a "policeman" and "informer." Neither of these references implies that the guerillas believed Cruz to hold political beliefs contrary to their own, much less that they attacked him because of such beliefs. While the guerillas may have regarded Cruz as an informant, this is not akin to imputing a political belief to him. *See id.* at 1489–90 (holding that applicant failed to establish imputed political opinion where he presented no evidence that an anti-governmental guerilla group imputed his father's political beliefs to him).

Substantial evidence therefore supports the BIA's finding that Cruz was not persecuted "on account of" an imputed political opinion.

---

8. Respondent contends that Cruz failed explicitly to raise the argument before the BIA that Sendero Luminoso guerillas imputed a political opinion to him because they perceived him to be an informer, thereby waiving his right to argue this issue before this court. Although the failure to raise an issue below typically "constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter," *Vargas v. United States Dep't of Immigration and Naturalization,* 831 F.2d 906, 907–08 (9th Cir.1987), the issue in question may have been argued in a slightly different manner in the lower court and still be preserved for appeal. *See Jordan v. Clark,* 847 F.2d 1368 (9th Cir.1988) (deciding the issue on appeal, although it was not clearly framed at trial as a separate theory of recovery, because the record was fully developed below); *Puerta v. United States,* 121 F.3d 1338, 1341–42 (9th Cir.1997). Moreover, in *Aronson v. RTC,* 38 F.3d 1110, 1114 (9th Cir.1994), we considered a defense based upon a regulation where, even if the defendant had not raised it below, the law in the area was clear and the issue was briefed by both parties. In this case, Cruz argued before the BIA that he should be protected under the political opinion category because of his status as a former member of the National Police. Before the IJ, Cruz testified that Sendero Luminoso guerillas attacked him because they perceived him to be an informant. He argued before the BIA that this perception contributed to his persecution by the group, although not explicitly in the "imputed political opinion" category. We consider the argument because the law surrounding this issue is clear, the issue was briefed by both sides, the record has been adequately developed, and the argument is presented in only a slightly different form than it was to the BIA.

## B. Withholding of Deportation

 Because Cruz has failed to establish eligibility for asylum, he "necessarily fails to establish eligibility for withholding of deportation." *Singh–Kaur v. INS*, 183 F.3d 1147, 1149 (9th Cir.1999).[9]

## IV. CONCLUSION

For the foregoing reasons, the petition for review is

**DENIED.**

---

9. Cruz also argues that because he, more likely than not, will be tortured by Sendero Luminoso guerillas if he returns to Peru, he should be given relief under Article 3 of the Convention Against Torture. This argument, however, was not raised before the BIA; therefore, we cannot consider it. *See Khourassany v.* *INS*, 208 F.3d 1096, 1099 (9th Cir.2000) ("consideration of claims under the Convention on Torture may not be urged in the first instance before our court; an applicant must first exhaust his or her administrative remedies before the BIA").