Violeto Pagaduan ABAYA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 99–70342.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 2000.

Decided Jan. 25, 2001.

Before SCHROEDER, BEEZER and
PAEZ, Circuit Judges.

MEMORANDUM*

Petitioner Violeto Pagaduan Abaya
seeks review of a BIA order denying him
political asylum, withholding of deportation
and voluntary departure under sections
208(a), 243(h), and 244(e) of the INA. We
have jurisdiction pursuant to former
§ 106(a) of the INA, 8 U.S.C. § 1105a(a)
(1998), and we grant review.

██  We generally review denial of polit-
ical asylum for abuse of discretion. *See
Ramos–Vasquez v. INS,* 57 F.3d 857, 861
(9th Cir.1995). In this case, however, be-
cause that denial was based on the BIA's
determination that Abaya's military activi-
ty did not constitute expression of a "polit-
ical opinion" within the meaning of the
statute, we review *de novo* for legal error.
*See Singh v.. Ilchert,* 63 F.3d 1501, 1506
(9th Cir.1995) ("This court reviews ques-
tions of law regarding the INA under the

* This disposition is not appropriate for publica-
tion and may not be cited to or by the courts
of this circuit except as provided by 9th Cir.
R. 36–3.

... *de novo* standard."). We owe the BIA, as the agency delegated authority to administer the INA, *Chevron* deference in this review, limited to the question whether "the statute is silent or ambiguous with respect to the specific issue" before it, and if so, whether its conclusion was based on "a permissible construction of the statute." *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). We review the BIA's fact-finding for substantial evidence. *See Cordon–Garcia v. INS*, 204 F.3d 985, 990 (9th Cir.2000). The substantial evidence standard requires Abaya to show that the evidence compels a contrary conclusion to the one the BIA reached. *See Alarcon–Serrano v. INS*, 220 F.3d 1116, 1118 (9th Cir. 2000).

The fundamental issue in this case is whether, as a matter of law, Abaya has an actual or imputed political opinion under the asylum statute, as demonstrated by his activities and status as a military officer.[1] Asylum is discretionary relief for aliens who have been persecuted in their own country "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (2000); 8 U.S.C. § 1158(b)(1) (2000). Abaya can show eligibility for asylum based on either past persecution or a well-founded fear of future persecution. *See Tarubac v. INS*, 182 F.3d 1114, 1118 (9th Cir.1999). The government argues that under the reasoning in

*Matter of Fuentes*, 19 I. & N. Dec. 658, 1988 WL 235456 (BIA 1988), violence between guerrillas and military officers "is inherent to the nature of a revolutionary struggle and cannot be the basis of an asylum claim," and that if Abaya prevails, all "successful" soldiers will qualify as refugees.

The government's reliance on *Fuentes* is inapposite in two respects. First, the attacks on the petitioner in *Fuentes* all occurred during and in the course of his military duties and did not, as here, involve threats to and attacks on his family, entry of his name on a hit list, or continuing threats after his military employment ceased. Second, and more importantly, in *Lim v. INS*, 224 F.3d 929 (9th Cir.2000), we recently implicitly rejected the per se rule articulated by *Fuentes* and endorsed in *Chanco v. INS*, 82 F.3d 298, 302 (9th Cir.1996) (attacks motivated solely by current military status do not constitute persecution on the basis of political opinion) and *Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir.2000) (same). In *Lim*, the petitioner was a member of the Philippine police intelligence unit that infiltrated the National People's Army's (NPA's) Sparrow Unit and consequently was subjected to a number of death threats. *See* 224 F.3d at 932. This court held that, "[a]ssuming that Lim risks persecution ..., such persecution would be 'on account of political opinion' imputed to him by his persecutors .... [R]etaliation against the informer was indeed on account of imputed political opinion and not merely personal revenge

1. The government argues that substantial evidence supports the BIA's decision, because the harm Abaya suffered was directly connected to his work as a military officer, and therefore he had no well-founded fear of future persecution. This argument misses the point, however: whether Abaya's military activities constitute a "political opinion," either actual or implied, rendering statutory eligibil- ity for political asylum, is a *legal* question, reviewed de novo. The factual issues, on the other hand, are limited to whether Abaya *had* a political opinion (or whether the National People's Army (NPA) imputed one to him), whether the NPA's attempts on Abaya actually occurred and whether the attacks were "because of" any actual or imputed political opinion.

.... [P]olitical revenge and political persecution are not mutually exclusive." *Id.* at 934; *see also Briones v. INS,* 175 F.3d 727 (9th Cir.1999) (en banc) (NPA retaliation against government informant was persecution on the basis of political opinion); *Velarde v. INS,* 140 F.3d 1305, 1311 (9th Cir.1998) (noting that *Fuentes* did not address the issue of persecution based on *imputed* political opinion). We held that the NPA's threats formed the basis of a well-founded fear of future persecution, *see Lim,* 224 F.3d at 934, thus rendering Lim statutorily eligible for political asylum. *See id.*

■ We adopt the reasoning in *Lim* and hold that Abaya has made out a prima facie case for political asylum based on past persecution by the NPA. While in *Lim* we concluded that the petitioner did not show past persecution, the threats at issue were not coupled with confrontation or other mistreatment. *See id.* at 936. Here, in contrast, the NPA followed up on its threats many times. The NPA personally confronted Abaya on at least five occasions; two of those confrontations occurred while Abaya was with his family. One of those confrontations resulted in a death and a wounding of Abaya's associates. The ferocity of the NPA's conduct here far exceeds that in *Lim,* and if any such mistreatment occurring during a petitioner's military service constitutes "persecution," this does.[2]

We conclude that Abaya did suffer persecution, so the burden of proof shifts to the INS to show that conditions in the Philippines have changed enough to obviate Abaya's presumed fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1)(i) (2000); *see also Korablina v. INS,* 158 F.3d 1038, 1043 (9th Cir.1998). "To establish eligibility based on a well-founded fear of persecution, the alien must have a subjectively genuine and objectively reasonable fear" of future harm. *Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). The INS presented no evidence of changed conditions in the Philippines. Abaya's fear is objectively reasonable, even though the most recently reported threat was seven years ago. First, the record of threats Abaya received was made at the time Abaya initially appealed to the BIA in 1994. Any subsequent NPA activity with respect to Abaya or his family would not be included in that record. Second, in other cases involving similar time lags, we have held asylum seekers' fears objectively reasonable. *See Lim,* 224 F.3d at 933 (last threat nine years before appellate opinion rendered); *see Tarubac,* 182 F.3d at 1117 (eight year time lag).

Abaya has shown that the NPA issued credible threats and attempted on multiple occasions to make good on those threats. He is eligible for political asylum based on past persecution. That past persecution gives rise to a statutory presumption that his fear of future persecution is well-found-

---

**2.** Our holding in this regard is unchanged by this court's recent decision in *Cruz–Navarro v. INS,* 232 F.3d 1024 (9th Cir.2000). That case held that the petitioner, a former member of Peru's National Police who had been targeted by Sendero Luminoso (the "Shining Path") due to his role in arresting many of their number, had not shown that he was persecuted on account of an imputed political opinion. The difference between that case and this one is that, in *Cruz–Navarro,* the petitioner "fail[ed] to link his persecution to anything

other than his status as a police officer ... [and did not show] that the guerrillas believed [the petitioner] to hold political beliefs contrary to their own, much less that they attacked him because of such beliefs." Slip op. at 14629. Because this case, unlike *Cruz–Navarro,* involves threats and attacks after petitioner left government service, we conclude that petitioner did show the requisite linkage between his persecution and an imputed political opinion.

ed, a presumption that the INS has not rebutted through evidence of changed conditions in the Philippines.

■ Finally, we address the issue of withholding of deportation. If Abaya can show a "clear probability" that his life or freedom will be threatened should he be returned to the Philippines, he is entitled to withholding of deportation. *See former* 8 U.S.C. § 1253(h)(1) (1997); *see also Gonzales-Neyra v. INS*, 122 F.3d 1293, 1297 (9th Cir.1997), *amended on other grounds* 133 F.3d 726 (9th Cir.1998). Being placed on a hit list, as Abaya testified he was, shows a "clear probability" of future persecution. *Montoya-Ulloa v. INS*, 79 F.3d 930, 932 (9th Cir.1996) ("[D]ue to the nature of the violence and threats directed at [the petitioner], i.e. his being placed on a 'blacklist,' we find that [he] has established a clear probability of persecution[.]"). Furthermore, the fact that the NPA continued to threaten Abaya's family, even after he left the country, indicates that the danger of persecution remains. *See Korablina*, 158 F.3d at 1046. Abaya's wife was threatened on three separate occasions, and she was followed once. These threats, combined with the severity of the attacks on Abaya when he was in the Philippines, and the absence of any indication in the record that the NPA's ability or commitment to carry out such threats has abated, lead to the conclusion that Abaya more likely than not remains in danger.

The major mitigating factors found in *Lim* to deny withholding of deportation—that the petitioner's six-year residence in the Philippines after leaving the police force resulted in no harm, as well as the continuing well-being of the petitioner's family in the Philippines—are not present here. Credible testimony supported by documentary evidence that threats are ser-

ious "can establish a clear probability of persecution." *Canjura-Flores v. INS*, 784 F.2d 885, 888 (9th Cir.1985). However, corroborating evidence is not necessarily required. *See id.* at 889. Abaya testified and presented evidence that he was threatened until he left the country. His wife received threats even after he left. There is not "substantial evidence" in this case, as there was in *Lim*, to "mitigate the risk ... to something below fifty percent." *Lim*, 224 F.3d at 938. Abaya has shown that he faces a sufficient risk in the Philippines to justify withholding of deportation.

We remand for the Attorney General to exercise her discretion on Abaya's asylum claim, and for withholding of deportation.

REVIEW GRANTED.