Juan Francisco VILCHEZ ZARATE, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 03–70428.
Agency No. A70–818–813.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 2, 2004.*

Decided Oct. 21, 2004.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Howard Robert Davis, Howard Davis, Los Angeles, CA, for Petitioner.

St. 315, Davis Miller & Neumeister, Van Nuys, CA, Regional Counsel, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, San Francisco, CA, Michael T. Dougherty, Dallas, TX, Colette J. Winston, Washington, DC, for Respondent.

Before REINHARDT, NOONAN, and CLIFTON, Circuit Judges.

CLIFTON, Circuit Judge, dissenting.

### MEMORANDUM**

Juan Francisco Vilchez–Zarate, a native and citizen of Peru, petitions for review of the decision of the Board of Immigration Appeals ("BIA") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. Because the BIA summarily affirmed the decision of the Immigration Judge ("IJ"), we review the IJ's decision as if it were that of the BIA. *Al–Harbi v. INS*, 242 F.3d 882, 887 (9th Cir.2001).

■ Vilchez–Zarate testified that, while working as a member of the Peruvian Republican Guard, he received repeated and specific death threats from members of the Shining Path and associated "narco-terrorists" because he refused to cooperate with their demands. He further testified that his cousin's car, in which he was known to ride, was bombed and that his police partner, who similarly refused to cooperate with the guerrillas, was killed. Because the IJ made no adverse credibility finding, we accept Vilchez–Zarate's testimony as true. *See Lim v. INS*, 224 F.3d 929, 933 (9th Cir.2000).

■ We hold that the record compels a finding that Vilchez–Zarate has demonstrated past persecution. First, contrary to the IJ's conclusion, the specific death threats Vilchez–Zarate received, combined with the car bombing and murder of his

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

partner, do rise to the level of persecution. *See, e.g., Salazar–Paucar v. INS*, 281 F.3d 1069, 1074–75 (9th Cir.2002); *Gonzales–Neyra v. INS*, 122 F.3d 1293, 1296 (9th Cir.1997), *as amended*, 133 F.3d 726 (9th Cir.1998).

Second, the IJ erred in finding that the persecution was not on account of any of the five enumerated grounds. Although persecution that results from a refusal to cooperate with guerrillas does not *necessarily* constitute persecution on account of a protected ground, *see INS v. Elias–Zacarias*, 502 U.S. 478, 481–82, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), when a petitioner's refusal to cooperate with a terrorist organization is motivated by loyalty to the government or opposition to the organization's goals, he qualifies for asylum on account of political opinion. *See, e.g., Gonzales–Neyra*, 122 F.3d at 1296. Furthermore, when guerrillas interpret a petitioner's refusal to accede to their demands as opposition to their political goals, the petitioner qualifies for asylum on account of *imputed* political opinion, irrespective of the petitioner's actual political opinion. *See, e.g., Agbuya v. INS*, 241 F.3d 1224, 1229 (9th Cir.2001). Significantly, we have found persecution on account of imputed political opinion when the Shining Path has threatened or attacked individuals who held high-profile government jobs, *see Velarde v. INS*, 140 F.3d 1305, 1312 (9th Cir.1998), and when it persecuted those who aligned themselves with the government and refused to accede to their demands. *See Vera–Valera v. INS*, 147 F.3d 1036 (9th Cir.1998).

In this case, it was widely known that Vilchez–Zarate was responsible for guarding prominent leaders of the Shining Path, and he repeatedly evinced his loyalty to the government and his opposition to the Shining Path by refusing to accede to the terrorists' demands. His persecution was a direct result of that decision. True, Vilchez–Zarate did not specifically inform the guerrillas that he opposed them, but as the Fifth Circuit held in *Rivas–Martinez v. INS* 997 F.2d 1143 (5th Cir.1993), an alien need not "foolhardily court death by informing armed guerrillas to their faces that she detests them or their actions or their ideologies...." *Id.* at 1147.[1]

That the Shining Path and other "narcoterrorists" might also have been motivated by "criminal" motives, as the IJ concluded, does not undermine Vilchez–Zarate's claim of persecution. *See Borja v. INS*, 175 F.3d 732, 735 (9th Cir.1999) (en banc); *see also Agbuya v.INS*, 241 F.3d 1224, 1228 (9th Cir.2001). An applicant need only "produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground." *Borja*, 175 F.3d at 736.

---

1. Vilchez–Zarate's case is distinguishable from *Cruz–Navarro v. INS*, 232 F.3d 1024 (9th Cir.2000). In *Cruz–Navarro*, the petitioner claimed that he was persecuted on account of political opinion and imputed political opinion because he was a known police officer and was believed to have "ratted" on Shining Path members. But, he "faile[d] to link his persecution to anything other than his status as a police officer." *Id.* at 1030. The guerrillas threatened him simply because he performed the ordinary duties of a police officer, accusing him only of being a "policeman" and "informer." *Id.* By contrast, Vilchez–Zarate linked his persecution to his repeated and express refusals to cooperate with the Shining Path. Furthermore, Vilchez–Zarate, unlike Cruz–Navarro, was not an ordinary officer targeted along with all other officers in the area. *Cf. id.* at 1027, n. 5. Rather, he had a high profile role guarding key leaders of the Shining Path and was persecuted because he aligned himself with the government, even when other officers cooperated with the guerrillas.

Finally, the record also compels a finding that the government was unable or unwilling to control the persecution. Vilchez–Zarate testified that he reported the incidents to his superiors, but the threats continued.

Because Vilchez–Zarate demonstrated past persecution, the burden is on the government to show by a preponderance of the evidence that country conditions have changed to such an extent that he no longer has a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1)(ii); *see also Salazar–Paucar*, 281 F.3d at 1076. Unlike in *INS v. Ventura*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), in this case the agency has already considered the issue. The IJ assumed, *arguendo*, that Vilchez–Zarate had demonstrated past persecution and concluded that country conditions had changed to rebut the presumption of a well-founded fear. In so doing, she looked specifically at the status of police officers, and therefore engaged in an "individualized analysis of how changed conditions [would] affect the specific petitioner's situation." *See Garrovillas*, 156 F.3d 1010, 1017 (9th Cir.1998) (internal quotations omitted); *cf. Lopez v. Ashcroft*, 366 F.3d 799, 805–07 (9th Cir.2004) (remanding because the agency failed to undertake the requisite individualized assessment).

■ However, the IJ's conclusion was not supported by substantial evidence. The State Department Reports in the record do not rebut the presumption of a well-founded fear with respect to Vilchez–Zarate's particular circumstance. Rather, the Reports reveal that, as the Shining Path has become weaker, it has focused on its most important enemies, specifically military officers and other high-profile targets involved in counter-terrorism activities. *See* U.S. Department of State, *Peru Country Report on Human Rights Prac-*

*tices for 1998* at 7; U.S. Department of State, *Peru Country Report on Human Rights Practices for 1997* at 6. In fact, at the time of the agency's decision, the Shining Path's reach, though diminished, still extended throughout Peru. *See Cardenas v. INS*, 294 F.3d 1062 (9th Cir.2002) (involving approximately the same time frame and finding that persecution by the Shining Path in Peru was still country-wide).

■ For the foregoing reasons, we GRANT the petition and find Vilchez–Zarate statutorily eligible for asylum. We REMAND solely for an exercise of discretion. However, we AFFIRM the IJ's decision that Vilchez–Zarate does not meet the criteria for withholding of removal or protection under the Convention Against Torture. Although Vilchez–Zarate's fear is well-founded, he has not demonstrated that it is more likely than not that he will be persecuted upon return, and although the persecution he suffered in Peru was serious, it did not amount to torture.

CLIFTON, Circuit Judge.

I respectfully dissent. The Shining Path targeted Vilchez–Zarate because he is a police office. Police officers *qua* police officers are not a protected group, and service as a police office, in itself, does not constitute political opinion. *Cruz–Navarro v. INS*, 232 F.3d 1024, 1028–30 (9th Cir. 2000). We held in *Cruz–Navarro* that a law enforcement officer is not entitled to asylum merely because a terrorist group retaliated against him for actions that he had taken against the group. The majority distinguishes our prior holding on the ground that, unlike the petitioner in *Cruz–Navarro*, Vilchez–Zarate has "linked his persecution to his repeated and express refusals to cooperate with the Shining Path." *Ante* at 131 1. But even a cursory review of the facts in *Cruz–Navarro* shows that the petitioner there had taken action

against the Shining Path, that the Shining Path had targeted officers generally, and that the Shining Path had specifically retaliated against the petitioner for actual or perceived opposition to the terrorist group. *See* 232 F.3d at 1027–28. The present case is not meaningfully distinguishable from *Cruz–Navarro*. That decision should be controlling, and the petition should be denied.