NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| ZARUHI POGHOSYAN and MARIAM POGHOSYAN, | ) ) ) | No. 07-73555 |
| Petitioners, | ) ) | Agency Nos. A79-280-742 A95-660-571 |
| | ) ) | |
| v. | ) ) | **MEMORANDUM**[*] |
| | ) | |
| ERIC H. HOLDER Jr., Attorney General, | ) ) ) | |
| Respondent. | ) ) ) | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 12, 2012[**]
Pasadena, California

Before:  D.W. NELSON and CALLAHAN, Circuit Judges, and
ERICKSON,[***]
District Judge.

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]  The panel unanimously finds this case suitable for decision without oral argument.  Fed. R. App. P. 34(a)(2).

[***]  The Honorable Ralph R. Erickson, Chief United States District Judge for the District of North Dakota, sitting by designation.

Zaruhi Poghosyan ("Poghosyan") and her daughter, Mariam Poghosyan ("Mariam"), natives and citizens of Armenia, petition for review of the Board of Immigration Appeals' ("BIA") denial of their applications for asylum, withholding of removal, and relief under Article III of the U.N. Convention Against Torture ("CAT").[1]  Poghosyan is the lead petitioner, and Mariam's claim is derivative.  We deny the petition.[2]

The BIA's decision that Poghosyan was ineligible for asylum due to lack of credibility must be upheld if supported by substantial evidence.  *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).  The same standard of review applies to the BIA's decision regarding withholding of removal, *Zehatye v. Gonzales*, 453 F.3d 1182, 1184-85 (9th Cir. 2006), as well as CAT.  *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003).  The BIA must set forth specific, cogent reasons for an adverse credibility finding.  *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002).  However, disagreement with the BIA's factual evaluation is insufficient.  *Aruta v. INS*, 80 F.3d 1389, 1393 (9th Cir. 1996).  Only if the BIA's reasoning is fatally

[1]United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted* Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85 (implemented at 8 C.F.R. § 208.18).

[2]Submission of this case was deferred to allow the parties to consider settlement.  The case was resubmitted once the Circuit Mediator informed the panel that mediation would not proceed.

flawed to the point that "any reasonable adjudicator would be compelled to conclude to the contrary" should the BIA be reversed. 8 U.S.C. § 1252(b)(4)(B); *Singh v. Ashcroft*, 367 F.3d 1139, 1143 (9th Cir. 2004). This "compel" standard requires more than mere support of a contrary conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). So long as the adverse credibility determination was based on a specific, cogent reason and serious inconsistencies in Petitioner's testimony that go to the heart of her application for asylum, the BIA's decision will be upheld. *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003) (referencing *de Leon Barrios v. INS*, 116 F.3d 391, 393 (9th Cir. 1997) and *Pal v. INS*, 204 F.3d 935, 938 (9th Cir. 2000)).[3]

Poghosyan has not met her burden of showing that the adverse credibility determination was not based on serious inconsistencies that go to the heart of her application for asylum. There are several inconsistencies between Poghosyan's written application and her testimony at her two hearings in regards to (1) the

[3]As pointed out by both parties, the REAL ID Act adverse credibility standards do not apply (the Act is only applicable to applications for asylum, withholding of removal, and CAT relief made on or after May 11, 2005). Pub. L. No. 109-13, Div. B, §§ 101(a)(3), 101(c) 101(d), 119 Stat. 231, 303 (2005) (codified at 8 U.S.C. §§ 1158(b)(1)(B)(iii) (asylum); 1231(b)(3)(C) (adopting the same standard for withholding of removal); 1229a(c)(4)(C) (all other relief)). Thus, pursuant to the pre-REAL ID standard, minor inconsistencies not going to the heart of Petitioner's claim are insufficient to support an adverse credibility determination. *Osorio v. INS*, 99 F.3d 928, 931 (9th Cir. 1996).

number and appearance of police officers; (2) the length of her detention; (3) the time of her detention; and (4) the amount of the bribe paid by her cousin on her behalf. In particular, the discrepancies as to whether she was arrested on a Friday or a Sunday and whether the arrest occurred in the morning or the evening, go to the heart of Poghosyan's claims and thus support the BIA's adverse credibility finding.[4] Additionally, Poghosyan failed to produce non-duplicative, material, easily available corroborating evidence, namely her daughter's testimony, and provides no credible explanation for such failure. *Sidhu v. INS*, 220 F.3d 1085, 1090 (9th Cir. 2000).

Furthermore, Poghosyan also failed to present credible, direct, and specific evidence supporting a reasonable fear of future persecution. *Ladha v. INS*, 215 F.3d 889, 897 (9th Cir. 2000). Armenia has made strides towards religious freedom since Petitioner left the country. Specifically, Armenia granted Jehovah's Witnesses formal registration in October 2004. The impact of this change in the law is reflected in the fact that, in contrast to prior years, in 2005 the Jehovah's Witnesses in Armenia reported no violence against their community. Poghosyan's fear of future persecution does not appear to be well-founded given the changed

---

[4] The dissent suggests that despite these inconsistencies, "the fact remains that Poghosyan was detained," but the material inconsistencies render Poghosyan's claim of detention unreliable.

4

country conditions in Armenia.

"Because [Poghosyan] has failed to establish eligibility for asylum, [s]he 'necessarily fails to establish eligibility for withholding of deportation.'" *Cruz-Navarro v. INS*, 232 F.3d 1024, 1031 (9th Cir. 2000) (quoting *Singh-Kaur v. INS*, 183 F.3d 1147, 1149 (9th Cir. 1999)). As Petitioner's CAT claim is based on the same testimony that has been found not credible, and she offers no other evidence that the agency should have considered, she has failed to establish eligibility for CAT relief. *See Farah v. Aschcroft*, 348 F.3d 1153, 1156-57 (9th Cir. 2003).

Finally, this court does not have jurisdiction to hear Poghosyan's claim for relief under humanitarian asylum, as she failed to raise the issue on appeal to the BIA. *Vargas v. INS*, 831 F.2d 906, 907-08 (9th Cir. 1987) (holding that an alien must exhaust all administrative remedies including raising issues of due process on appeal to the BIA prior to seeking review by the Court of Appeals). Moreover, her claim is not well taken, as humanitarian asylum requires severe and atrocious past persecution, and Poghosyan's alleged detentions and beatings do not rise to this level. 8 C.F.R. § 1208.13(b)(1)(iii)(A); *Lopez-Galarza v. INS*, 99 F.3d 954, 963 (9th Cir. 1996).

We are not unsympathetic to the views expressed by the dissent. Indeed, we deferred submission of this petition to allow the parties to explore mediation.

5

These efforts failed. Thus, we are forced to decide this petition based on the administrative record before us and, based on the applicable standard of review, have no choice but to conclude that the BIA's decision is supported by substantial evidence.

Petition DENIED.

*Poghosyan v. Holder*, 07-73555

NELSON, Senior Circuit Judge, dissenting:

I respectfully dissent. The IJ's and BIA's adverse credibility determinations are not supported by substantial evidence. *Soto-Olarte v. Holder,* 555 F.3d 1089, 1091 (9th Cir. 2009). I would grant the petition for review.

Poghosyan is a Jehovah's Witness who came to the United States from Armenia in October of 2000. She left behind her only daughter, then a teenager. Before Poghosyan fled Armenia, police officers arrested and detained her on three separate occasions because of her efforts to promote her religion. Each time, the police officers abused Poghosyan physically and verbally. They forced her to sign documents that she was not permitted to read and threatened to prosecute her if she continued preaching about her religion. Each time, Poghosyan's cousin was forced to pay a bribe to get her released from custody. All of these facts go to the heart of Poghosyan's claims for asylum, withholding of removal, or relief under CAT.

However, the IJ and BIA found that Poghosyan was not credible because of minor inconsistencies and omissions in her testimony relating to trivial details. *Cf. Chen v. Ashcroft*, 362 F.3d 611, 620 (9th Cir. 2004). "Indeed, we have frequently characterized discrepancies in dates [and times] which reveal nothing about an asylum applicant's fear of h[er] safety to be minor inconsistencies that cannot form

1

the basis of an adverse credibility finding." *Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir. 2000) (internal citation and quotations omitted). Poghosyan's testimony that she was detained on a Sunday in 2000, and not on a Friday, is one example of many such minor inconsistencies. <u>Neither the majority nor the BIA explain why this discrepancy goes to the heart of Poghosyan's claim</u>. The fact remains that Poghosyan was detained, regardless of the day of the week on which that event took place.

The IJ and BIA also failed to provide specific, cogent reasons for finding that Poghosyan was not credible. *Damaize-Job v. INS*, 787 F.2d 1332, 1338 (9th Cir. 1986). For instance, the IJ and BIA pointed to the fact that Poghosyan testified initially that her cousin paid 7,000 drams to police officers to secure Poghosyan's release from custody in 1999, but then later testified that her cousin paid 10,000 drams. This is a difference of six dollars. <u>The IJ and the BIA never explained, however, why this minor discrepancy suggests that Poghosyan was lying</u>. I cannot see what motivation Poghosyan would have for making an intentional misrepresentation over such a small amount of money. The most logical explanation is that Poghosyan was mistaken, not that she lied in her testimony.

Moreover, none of the discrepancies noted by the IJ or BIA concern

2

evidence that would enhance Poghosyan's claims of persecution. *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000) ("If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, [they] have no bearing on credibility.") (internal citations omitted). Whether Poghosyan spent two days or two and a half days in detention in September of 2000 does not change the fact that she was incarcerated because of her religious activity and that she consequently feared for her safety.

Finally, the BIA erred in affirming an adverse credibility finding based on Poghosyan's failure to present further corroborating evidence. "Where, as here, a petitioner provides some corroborative evidence to strengthen [her] case, [her] failure to produce still more supporting evidence should not be held against [her]." *Gui v. INS*, 280 F.3d 1217, 1227 (9th Cir. 2002).

In this case, Poghosyan submitted ample evidence regarding her claim of past persecution and her well-founded fear of future persecution. For example, Poghosyan submitted two letters from friends in Armenia corroborating her testimony that she was beaten by the police to the point of requiring hospitalization. She also submitted two U.S. State Department country reports from 2002 and 2003, two U.S. State Department International Religious Freedom Reports from 2002 and 2005, and a news article entitled "Jehovah's Witnesses,

5000 citizens–out of law," all of which collectively documented accounts of harassment and abuse targeted at Jehovah's Witnesses before and after the Armenian government legalized the religion in 2004. These incidents were perpetrated by government officials directly and facilitated indirectly by the government's unwillingness to intervene.

Given the evidence in the record, it was also inappropriate for the BIA to base its adverse credibility finding on Poghosyan's failure to submit further evidence. There was no basis for the BIA to draw a negative inference from the fact that Mariam, Poghosyan's daughter, did not testify. Mariam is not a Jehovah's Witness, she did not witness any of the attacks against her mother, and she was just a young teenager at the time. The BIA's assertion that Mariam could have verified any of the salient facts in Poghosyan's case was "based on pure speculation." *Chen*, 362 F.3d at 619; *see Maini v. INS*, 212 F.3d 1167, 1175 (9th Cir. 2000) ("We have said it before and we say it again: conjecture and speculation can never replace substantial evidence."). Moreover, Poghosyan was under no obligation to submit a letter from her cousin who is a Jehovah's Witness in Armenia. As this Court has long recognized, "obtain[ing] corroborating affidavits from relatives . . . living outside of the United States . . . is almost never easily available." *Sidhu v. INS*, 220 F.3d 1085, 1091-91 (9th Cir. 2000); *see also Dawoud v. Gonzales*, 424

4

F.3d 608, 612-13 (7th Cir. 2005) ("Many asylum applicants flee their home countries under circumstances of great urgency. Some are literally running for their lives and have to abandon their families, friends, jobs, and material possessions without a word of explanation. . . . To expect these individuals to stop and collect dossiers of paperwork before fleeing is both unrealistic and strikingly insensitive to the harrowing conditions they face.").

In this case, because "each of the IJ's [and] BIA's proffered reasons for an adverse credibility finding fails, we must accept [Poghosyan's] testimony as credible." *See Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir. 2004)*, superseded by statute as explained in Aden v. Holder*, 589 F.3d 1040, 1044-45 (9th Cir. 2009).

In addition to my concern that the adverse credibility determinations were not supported by substantial evidence, I am troubled by the context in which this case arises. Under the new Department of Homeland Security policies, this case likely would be dismissed. Poghosyan is an elderly mother with no criminal history who entered this country lawfully, seeking freedom from religious persecution.

For these reasons, I would grant the petition for rehearing, reverse the adverse credibility determination and remand to the BIA to consider whether Poghosyan qualifies for asylum, withholding of removal, and relief under CAT. I

respectfully dissent.