Anatoly Michaelovich KOZULIN; Lioudmila Nikolaevna Larina, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 99–70162.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 2000.

Filed July 14, 2000.

Daniel M. Kowalski, Ryan, Swanson & Cleveland, Seattle, Washington, for the petitioners.

Richard M. Evans, James Hunolt, United States Department of Justice, Washington, D.C., for the respondent.

Before: HUG, Chief Judge, and GOODWIN and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

Anatoly Michaelovich Kozulin petitions for review of the denial by the Board of Immigration Appeals ("BIA") of his application for asylum and withholding of deportation under 8 U.S.C. §§ 1158(a), 1253(h) (1994). We deny the petition, because substantial evidence supports the conclusion that Kozulin failed to prove: (1) that any mistreatment he suffered was on account of his political opinion, or (2) that upon his return to Russia he risks dispro- portionately severe punishment for his illegal departure to the United States.

## BACKGROUND

Kozulin, a native and citizen of Russia, entered the United States in April of 1991 and applied for asylum on June 26, 1991.[1] At his hearing before the Immigration Judge ("IJ") in July 1997, Kozulin conceded deportability but contended that he was eligible for asylum and withholding due to: (1) an alleged attack he suffered at the hands of two unknown men, and (2) his fear of reprisals for illegally departing Russia.

At his hearing, Kozulin testified to the following account. Kozulin worked as a mechanic on a merchant marine vessel. Sometime before the winter of 1990–91, seven crew members, including Kozulin, addressed a letter to their ship's company accusing their captain of stealing provisions from the ship and selling them on the black market. After the captain discovered the letter, he fired the other six signatories to the letter and left them in Vladivostok, but retained Kozulin because the assistant mechanic was ill.

Some time after leaving Vladivostok, the captain's assistant approached Kozulin and demanded that Kozulin remove his signature from the letter and, in return for the removal, the captain's assistant offered to obtain Communist party membership for Kozulin. Subsequently, the captain himself repeated the demand that Kozulin retract the letter. Kozulin refused to remove his name from the letter, but he did not testify that he gave any reason for his refusal.

Approximately three weeks later, according to his story, two or three men attacked and beat him. He did not know who his assailants were, and he did not testify that they said anything to him. Kozulin told the IJ of no maltreatment subsequent to the one attack. He was granted a week off to recuperate from his

---

1. Kozulin's wife, Lioudmila Nikolaevna Lari- na, is named in the appeal but raises no claims separate from those derivative of her husband's.

injuries, and ship's personnel provided him with medical care. Then, a month after the incident, the ship docked at Kodiak, Alaska. Upon docking, Kozulin was granted liberty, at which time he fled the ship and opted to seek asylum.

Kozulin testified that he did not have any problems in the former Soviet Union until he signed the letter. Kozulin was never arrested or detained or mistreated by that government, he was never a member of any political group or party, and he was issued a passport and allowed to travel to the United States.

After hearing the testimony, the IJ concluded that, "assuming arguendo that everything should be accepted as true," Kozulin did not prove as a factual matter that the alleged attack was on account of Kozulin's political opinion. The BIA affirmed and agreed with the IJ's conclusion that Kozulin had failed to show that any persecution had occurred on account of his political opinion. From the BIA's dismissal, Kozulin petitioned the Ninth Circuit.

## JURISDICTION & STANDARD OF REVIEW

■ Because Kozulin's removal proceedings were pending prior to April 1, 1997, we continue to exercise jurisdiction pursuant to 8 U.S.C. § 1105a(a) (1994). *See Sebastian–Sebastian v. INS,* 195 F.3d 504, 505 n. 2 (9th Cir.1999). We review for substantial evidence. *See Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). We must uphold the decision of the BIA unless no reasonable factfinder could find Kozulin ineligible for asylum, so that the evidence compels reversal. *See INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Where the BIA does not independently review the record, or where the BIA relies upon the IJ's opinion as a statement of reasons, we look to the IJ's oral decision as a guide to what

lay behind the BIA's conclusion. *See Avetova–Elisseva v. INS,* 213 F.3d 1192, 1196–97 (9th Cir.2000); *Alaelua v. INS,* 45 F.3d 1379, 1381–82 (9th Cir.1995).

## DISCUSSION

### A. Causation of Attack

■ Under 8 U.S.C. § 1158(a) (1994), Kozulin is eligible for a discretionary grant of asylum if he is a "refugee," i.e., if he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see Elias–Zacarias,* 502 U.S. at 481, 112 S.Ct. 812. Kozulin contends that the alleged beating he suffered after reporting his ship captain's misconduct constitutes past persecution on account of Kozulin's anti-Communist views. A finding of past persecution raises a regulatory presumption that an alien has a well-founded fear of future persecution, rebuttable by a showing that conditions have changed sufficiently so as to overcome that presumption. *See* 8 C.F.R. § 208.13(b)(1)(i) (1999); *Singh v. Ilchert,* 69 F.3d 375, 378 (9th Cir.1995).

■ To establish eligibility for asylum on past persecution grounds, an applicant must prove that: (1) he suffered persecution; (2) he holds a political opinion (actual or imputed); (3) his political opinion was known to or imputed by the persecutors; and (4) the persecution was on account of his political opinion. *See Sangha v. INS,* 103 F.3d 1482, 1486–87 (9th Cir.1997). The central issue in Kozulin's appeal is the issue of causation-that is, whether or not the evidence compels the conclusion that the attack was "on account of" Kozulin's anti-Communist views.[2]

2. There is no claim that the attackers acted at the behest of the Russian government, but "persecution cognizable under the [Immigration and Nationality] Act can emanate from sections of the population that do not accept the laws of the country at issue, sections that

the government of that country is either unable or unwilling to control." *Borja v. INS,* 175 F.3d 732, 735 n. 1 (9th Cir.1999) (citations omitted). We express no opinion about whether members of a political party aboard a merchant marine ship constitute such a

■■ To satisfy the causation requirement, a petitioner "must prove something more than violence plus disparity of views." *Sangha,* 103 F.3d at 1487. We have held often that the mere presence of some political element does not require the conclusion that some maltreatment was on account of political opinion. For instance, in *Florez-de Solis v. INS,* 796 F.2d 330, 335 (9th Cir.1986), we held that, where members of political movement acted violently to collect a debt, that violence did not compel a finding of persecution on account of political opinion. Likewise, in *Chanco v. INS,* 82 F.3d 298, 302 (9th Cir. 1996), we rejected the asylum claim of a plotter of a coup d'etat and held that "the prosecution Chanco faces is not on account of his political opinion but on account of his illegal action." *Id.*

Rather, a petitioner must prove that the alleged persecution was in fact "because of" the applicant's political opinion. *Elias–Zacarias,* 502 U.S. at 482–83, 112 S.Ct. 812 (holding that guerrillas' forced recruitment is not persecution on account of political opinion unless the guerrillas acted "because of" the applicant's political opinion). For instance, in *Sangha,* we upheld the BIA's denial of asylum where Sangha claimed that he was forcibly recruited on account of his political opinion, but where "it [was] equally likely that the [attackers] acted for other reasons." *Sangha,* 103 F.3d at 1490.

We hold that substantial evidence supports the conclusion that Kozulin failed to prove that his attack, as wrongful as it might have been, was in fact motivated by his purported anti-Communist views. Kozulin's theory that his refusal to recant the letter caused him to be attacked might have been a reasonable inference had it actually been drawn by the factfinder. We note, though, that some facts weaken that inference: Kozulin did not identify the men who beat him, no evidence suggests that the attackers in any way expressed their motivation, and the attack occurred weeks after the refusal to recant the letter. In any event, we need not resolve that factual dispute.

Even if the attack was motivated by Kozulin's refusal to renounce the letter, the evidence nonetheless does not compel the conclusion that the attack was "on account of" Kozulin's political opinion. Rather, substantial evidence suggests that Kozulin was attacked not for his political beliefs, but for the same reason that the other six accusers were fired-because of the threat to the ship's captain. Kozulin did not testify that his accusation of the captain was motivated by political beliefs, nor does the evidence compel the conclusion that an adverse political opinion was imputed to him due to the accusation. *Cf. Elias–Zacarias,* 502 U.S. at 482, 112 S.Ct. 812 (noting that "a person who supports a guerrilla movement might resist recruitment for a variety of reasons"). At the very least, "it is equally likely that the [attackers] acted for other reasons" than for Kozulin's anti-Communist views. *Sangha,* 103 F.3d at 1490.

The record shows that those who threatened the captain suffered reprisals-the other six alleged accusers were fired despite any indication that they were anti-Communist. There is no evidence that ship's personnel engaged in a course of harassment of anti-Communists, nor is there any indication that any other anti-Communists suffered reprisals of any kind. Kozulin testified to no other incidents of harm or harassment for his political beliefs before or after the single attack.

Kozulin's direct testimony from his hearing assists our inquiry.

Q: Do you know who beat you?

A: No.

Q: In your opinion, why were you beaten?

A: Because I signed a letter which was addressed to the captain, and that letter says that he sold illegally products

"section," or whether a single attack effects "persecution," when that attack is illegal and arguably compensable under the laws of the fled country.

which he shouldn't do that because the products belonged to all crew and another ship which was on that particular trip. Thus, Kozulin's own testimony indicates that his threat to the captain, independent of Kozulin's political opinion, motivated the attack. Even Kozulin's brief on this appeal concedes that Kozulin was beaten because he "threatened the mini-kleptocracy of the captain of his ship." The captain's endeavors to maintain order within his questionable enterprise, however unpalatable, do not constitute persecution on account of political opinion.

■ Kozulin insists that inclusion of the offer of Communist party membership in the captain's demand, followed by an anonymous assault, suffices to compel asylum eligibility. We disagree. That an attack occurred three weeks after a refusal to join a political party does not compel a finding of asylum eligibility if substantial evidence provides another independent apolitical motivation for the attack; the law of asylum does not require the "logical fallacy of *post hoc, ergo propter hoc*" (literally, "after this, therefore because of this"). *Huskey v. San Jose*, 204 F.3d 893, 899 (9th Cir.2000); *cf. Hardt v. Heidweyer*, 152 U.S. 547, 558, 14 S.Ct. 671, 38 L.Ed. 548 (1894) ("*Post hoc, propter hoc*, is not, however, sufficient, and the rule of causation implies some other sequence than that of time."); *cf. Sangha*, 103 F.3d at 1487 ("Applicants can no longer establish that their persecution was 'on account of' political opinion by inference....").

For the proposition that the attack did as a matter of law occur "on account of" his political opinion, Kozulin relies on *Borja v. INS*, 175 F.3d 732 (9th Cir.1999) (en banc). In *Borja*, we made clear that, where the evidence compels the conclusion that persecutors' conduct was motivated by the victim's stated political opposition, the presence of possible "mixed motives," *id.* at 736, need not defeat an asylum claim. *See id.* at 735. Borja was confronted by Communist insurgents with "a well-documented history of political violence," *id.* at 734, who engaged in a pattern of

extortion to fund their war machine. *See id.* at 734–35. The insurgents beat her, slashed her with a knife, and subsequently engaged in a long pattern of harassment. *See id.* at 736. When initially approached by the insurgents, Borja "articulated her political opposition," and her attackers "acted in direct response to her statement of political opposition." *Id.* Because the evidence compelled the conclusion that the subsequent harm was "triggered by her initial hostile political confrontation," and because there was "no substantial evidence in the record to the contrary," we granted Borja's asylum claim. *Id.* at 737.

Kozulin's case must be distinguished. Kozulin did not "articulate [his] political opposition"; he gave no indication of political opinion beyond refusing to accept the offer of party membership. Kozulin alleges no "direct response" to his refusal; three weeks passed before the anonymous attack. Kozulin's attackers did not have "a well-documented history of political violence"; no evidence suggests that any other anti-Communists were harmed. Most importantly, Kozulin cannot claim that "no substantial evidence in the record" supports the BIA's decision; the evidence taken as a whole, including Kozulin's own testimony, suggests that the attack was motivated by apolitical revenge for the apolitical accusation against the captain. For all of the foregoing reasons, we reject Kozulin's claim.

**B. Fear of Severe Punishment for Illegal Departure**

■ Kozulin also contends that his application for asylum itself triggers asylum eligibility. He contends that his escape to and application for asylum in the United States constitutes treason under Article 64 of the Russian Code, and that his fear of punishment constitutes a well-founded fear of persecution on account of his political opinion.

For this proposition, Kozulin relies almost exclusively on *Rodriguez–Roman v. INS*, 98 F.3d 416 (9th Cir.1996), in which we addressed the petition of a Cuban de-

**1118**

fector. In *Rodriguez–Roman,* we held that "an asylum applicant who left his country because of his political opinions and who faces severe punishment for the crime of illegal departure has established that he is subject to persecution on account of political opinion." *Id.* at 430. The "disproportionately severe punishment" rule explained by *Rodriguez–Roman* and *Li v. INS,* 92 F.3d 985, 988 (9th Cir.1996), operates as an exception to the "general rule" that "[c]riminal prosecution for illegal departure is generally not considered to be persecution." *Li,* 92 F.3d at 988 (denying petition of Chinese defector) (citations omitted).

Our holding in *Rodriguez–Roman* does not support Kozulin's petition. Kozulin offers insufficient proof that he will suffer punishment upon return to Russia, much less that any punishment would be "disproportionately severe." *Li,* 92 F.3d at 988; *see also Rodriguez–Roman,* 98 F.3d at 431 (discussing the severity requirement). Members of Rodriguez–Roman's family had variously been harassed, arrested, and interrogated for suspicion of helping the petitioner's flight. *Rodriguez–Roman,* 98 F.3d at 419–20. Nothing about Kozulin's case resembles those facts in *Rodriguez–Roman.* Indeed, there is no indication that anyone in Russia has any interest in Kozulin.

Furthermore, Cuba's political conditions are officially treated by the United States as different from those of modern Russia. In *Rodriguez–Roman,* the IJ made a factual finding that the petitioner would face "harsh, if not fatal" punishment upon return to Cuba, and the State Department's report confirmed that Cuba severely punished defectors. *Id.* at 420. In the instant case, however, the IJ made no such factual finding, and the State Department reports far more benevolent conditions in Russia.

According to the State Department's 1996 Country Profile, "[i]t is highly unlikely that an individual returning to Russia now would face mistreatment because of political views expressed or actions taken in the late eighties or early nineties, even if that individual suffered for those actions at that time." *See* Bureau of Democracy, Human Rights and Labor, U.S. Dept. of State, *Russia–Profile of Asylum Claims & Country Conditions* 5 (April 1996). In another recent report, the State Department indicated that·"[w]e are aware of no case in which punitive measures were taken against an individual by the authorities merely for having remained in the United States longer than planned or for having applied for asylum." Bureau of Democracy, Human Rights and Labor, U.S. Dept. of State, *Russia–Profile of Asylum Claims & Country Conditions* 33 (May 1995). We emphasize that we do not hold that conditions have changed so much as to eliminate the well-founded fear of a petitioner who has suffered persecution in the past. However, under current conditions, a Russian citizen cannot manufacture asylum eligibility simply by applying for asylum.

### CONCLUSION

■ We deny the petition. Because Kozulin fails to qualify for asylum, he necessarily fails to make a claim under the stiffer standard of withholding of deportation. *See Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc).

**PETITION DENIED.**