NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0185n.06
Filed: March 15, 2005

No. 03-3768

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

HONG VAN DOAN,                          )
                                        )      ON APPEAL FROM THE
        *Petitioner*,                   )      BOARD OF IMMIGRATION
                                        )      APPEALS
v.                                      )
                                        )      OPINION
JOHN ASHCROFT, ATTORNEY GENERAL,        )
                                        )
        *Respondent*.                   )

BEFORE:     COLE, GILMAN, Circuit Judges; POLSTER, District Judge.*

        **R. GUY COLE, JR., Circuit Judge.** This is an appeal from the Board of Immigration

Appeals' ("BIA") summary affirmance of the decision of an immigration judge, denying Petitioner

Doan's claims for asylum and withholding of removal. Doan asserts that he will suffer persecution

if he returns to Vietnam because, as an attorney, he openly criticized the Vietnamese legal system,

and because he applied for asylum in the United States. For the reasons discussed below, we **DENY**

the petition for review.

**I. BACKGROUND**

        Hong Van Doan left Vietnam on March 20, 2000 and came directly to the United States on

a nonimmigrant visa. A year later, he applied for asylum.

_____

        *The Honorable Dan Aaron Polster, United States District Judge for the Northern District
of Ohio, sitting by designation.

In Vietnam, Doan worked as an attorney in Ho Chi Minh City. Doan worked predominantly on criminal cases. In January 1997, Doan represented a client named Pham Minh Thap, a director of a private company who was accused of embezzlement in what Doan describes as a high-profile case. Doan presented evidence of Thap's innocence to the trier of fact, which was a five-member panel consisting of two judges and three representatives of the "people's committee of the jurisdiction." Thap was ultimately convicted and, according to Doan, given a death sentence. Doan believed that the trial process was fundamentally unfair, because the court was controlled by the Communist government. Doan contends that the government was complicit in the embezzlement and that Thap was innocent.

Doan claims that about a week after the trial ended, he was interviewed by a legal newspaper in Vietnam about his perception of the unfairness of the trial. Doan told the newspaper that certain government officials were the actual guilty parties and that they caused his client to be wrongfully convicted. Doan gave the newspaper the names of these officials. About ten days later, Doan claims that the named government officials told him that they believed that his client was guilty, and in Doan's words, "pressured" him to stop accusing them. According to Doan, the officials said something to the effect of "you people are the lawyers in a socialist country, you know what will happen if you keep this up, if you keep what you're doing up." Doan testified later in the immigration proceedings that in Vietnam, "lawyers are just there for appearance sake and have no real power in front of the court . . . ."

Doan continued to practice law in Vietnam for three more years, without any interference by the named government officials or any other representatives of the government, although he

claims that the justice system remained flawed and that decisions by the courts often were reached in advance of trial. In May of 1999, Doan came to the United States for approximately two months and then returned to Vietnam.

In 2000, Doan made his second trip to the United States, at which point he applied for asylum. Doan then sent a letter to a Vietnamese-language newspaper in Memphis, Tennessee, where he lived, explaining the reasons for his emigration from Vietnam and seeking community support for his request for asylum. The newspaper reported on Doan's story, stating that "a high-ranking official of the Vietnamese Communist law system" was seeking asylum. The newspaper did not identify Doan by name.

In the proceedings before the immigration judge, Doan argued that the Vietnamese government must have learned that he was applying for asylum through the newspaper article. Doan claims that in response to learning that he was seeking asylum, the Vietnamese government prohibited his wife, who still lives in Vietnam, from working as a teacher. As evidence, Doan presented an email from his wife that states, "Because of your situation, the Board of education has prohibited me from my teaching my students. Your office was announced will be closed. [sic]"

Based upon these facts, Doan argued before the immigration judge that he had suffered past persecution and has a well-founded fear of future persecution in Vietnam based on his political view that the justice system is corrupt, his conduct in speaking out against that system, and the fact that he applied for asylum in the United States. Doan testified that he believed he would be imprisoned if he returned to Vietnam.

In addition to Doan's testimony, the State Department's 1997 Country Profile for Vietnam was submitted. The report states that "[t]he authorities encourage those who either emigrated legally or were granted permanent resettlement after illegal departure to return as visitors. Nevertheless, police monitor returnees, especially those who are under suspicion as a result of their past actions or past association." Regarding persecution based on political opinion, the report states that "The ability of Vietnamese citizens to express their political opinions, via the press . . . is seriously constrained and in some cases nonexistent. . . . Pervasive Party guidance and national security legislation are sufficiently broad that they ensure effective self-censorship in the domestic public media."

The State Department's 2000 Country Report, also submitted, states that:

The Government continued to prohibit free speech that strayed outside narrow limits to question the role of the party, criticize individual government leaders, promote pluralism or multiparty democracy, or question the regime's policies on sensitive matters . . . . The few persons who dared to speak out on these matters in recent years . . . were subjected to periodic questioning and close monitoring by security officials. . . . Some persons who express dissident opinions on religious or political issues also are not allowed to travel abroad.

This report also states that the judiciary is not independent and some citizens are denied fair trials.

In an oral decision, the immigration judge found Doan to be credible but then noted that the government officials' only meeting with Doan did not constitute past persecution. The judge also found that Doan had not demonstrated a well-founded fear of future persecution, noting that after Doan expressed his opinion that the justice system in Vietnam was corrupt, he continued to practice law and live in Vietnam without incident. Furthermore, the judge observed that when Doan returned to Vietnam after briefly visiting the United States in 1999, the security officials at the airport in Ho

Chi Minh City who examined his passport did not give him any problems. Finally, the judge found that Doan did not have a well-founded fear of persecution because he had applied for asylum in the United States. The judge found that Doan had presented no evidence that the Vietnamese government knew that he was seeking asylum, or that if the government did know, that it was likely to persecute him on that basis. The judge also denied withholding of removal.

Doan appealed to the BIA, which summarily affirmed the immigration judge's decision. Doan, acting *pro se*, timely appealed to this Court. Accompanying his brief to this Court, Doan submitted "new evidence" that was not considered by the immigration judge.

## II. ANALYSIS

### A. Standard of Review

Because the BIA summarily affirmed the decision below, we review the immigration judge's opinion as the final agency decision. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). The immigration judge's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude the contrary." 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992). Questions of law are, as usual, reviewed *de novo*. *Csekiniek v. INS*, 391 F.3d 819, 822 (6th Cir. 2005).

### B. Doan's New Evidence on Appeal

For the first time on appeal, Doan sets forth new evidence in support of his claim that he has a well-founded fear of future persecution if he returns to Vietnam. Before considering the merits of his claim, we must determine whether this evidence is properly before us.

Doan offers this Court three items of "new" evidence: (1) a tape recording, which Doan claims is a broadcast from a Vietnamese-language radio program from Washington, D.C., called "Radio of Freedom Asian"; (2) a newspaper article briefly describing the case against Thap and others; and (3) a letter from the Ho Chi Mihn Bar Association stating that Doan was in fact the attorney appointed to defend Tong Minh Pham.[1]

The Government argues that we cannot consider this new evidence because it was not made part of the administrative record before the immigration judge and the BIA. The Government is correct. This Court cannot consider extra-record evidence. 8 U.S.C. 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"); *Bejjani v. INS*, 271 F.3d 670, 676 (6th Cir. 2002) ("this Court is prohibited from considering facts not in the administrative record"); *Goonsuwan v. Ashcroft*, 252 F.3d 383, 391 n.15 (5th Cir. 2001) (holding that the court's review of the BIA's decision is confined to those facts in the administrative record before that agency).

The proper course of action for a petitioner who has new evidence regarding his asylum or removal proceedings is to ask the BIA to reopen the proceedings. *Goonsuwan*, 252 F.3d at 391. *Id*. Here, the administrative record reveals that Doan has petitioned the BIA to reopen the proceedings and the BIA apparently has not yet rendered a decision. Therefore, until the BIA acts, we cannot consider the tape recording, the newspaper article or the letter.

---

[1] Doan's client's name has been cited as both "Tong Minh Pham" and "Pham Minh Thap" in various documents, but it appears that these names both refer to one of the people that Doan represented in the aforementioned embezzlement case.

In any case, Doan's new evidence is not particularly helpful to him because none of it is relevant to any of the reasons cited by the immigration judge for denying asylum. The immigration judge found Doan to be credible, but denied Doan's petition on the ground that the isolated incident of potential harassment by government officials did not constitute past persecution, and because there was an absence of substantial evidence that Doan has a well-founded fear of future persecution. Doan's new evidence does not shed any light on these issues.

## C. Doan's Asylum Claim

As an initial matter, the Government argues that Doan has waived all arguments regarding the correctness of the immigration judge's decision to deny asylum and permit withholding of removal because Doan does not articulate the reasons why the immigration judge's decision is in error. Doan submitted a three-page *pro se* brief which describes the new evidence that he wishes this Court to review and upon which he seeks relief. Doan ends his brief by asking the Court to reconsider his withholding of removal claim. Given that Doan is proceeding *pro se*, the Government's waiver argument is overly formalistic. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.") Because *pro se* filings should be construed liberally, and because Doan does seek review of his asylum and withholding–of–removal claims, those claims are properly before us.

An applicant may obtain asylum under Section 208(a) of the Immigration and Nationality Act if he shows that he is a "refugee," meaning that he is unwilling or unable to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

The applicant must establish that he has both a subjective and objective fear of persecution. *Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir. 1996). The "well-founded fear of persecution" standard for asylum requires "a showing by credible, direct, and specific evidence . . . of facts that would support a *reasonable* fear that the petitioner faces persecution." *Klawitter v. INS*, 970 F.2d 149, 153 (6th Cir. 1992) (quoting *Rodriguez-Rivera v. INS*, 848 F.2d 998, 1002 (9th Cir. 1988)).

Doan was represented by counsel before the immigration judge and the BIA. At the hearing before the immigration judge, Doan claimed that he has a well-founded fear of being persecuted in Vietnam because he expressed his political opinion that the legal system in Vietnam is corrupt and because he applied for asylum in the United States. Doan alleged that he told the Vietnamese press about how his client's case was pre-determined and that certain government officials were using his client as a scapegoat. The immigration judge credited Doan's testimony on this point. Certain Vietnamese government officials then, in the judge's words, gave Doan a "talking-to" about what he told the press. The judge found, however, that this incident neither amounted to persecution, nor did it give credence to Doan's fear of future persecution, particularly given that Doan continued to live and practice law in Vietnam for three more years without any further confrontations by government officials or any other related problems.

Moreover, the immigration judge correctly determined that the single visit by government officials did not amount to persecution. *See Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998) (finding that petitioner was harassed when the KGB questioned him several times and searched his home, but that he was not persecuted). Furthermore, the visit from the government officials cannot alone compel this Court to find that Doan has both a subjective and objective fear of persecution

where Doan himself remained in Vietnam for several more years without any incident, and even returned to Vietnam after his first trip to the United States. An isolated threat of this nature, followed by a lengthy period of inaction, does not reasonably give rise to a well-founded fear of future persecution. *Cf. Pilicia v. Ashcroft*, 388 F.3d 941, 954-55 (6th Cir. 2004) (finding that there was no "reasonable probability" of future persecution of the petitioner based on the fact that the petitioner had only "sparse" political involvement amounting to attending five political rallies, even though petitioner had been detained twice following these rallies). The facts as asserted by Doan do not create the sense of fear and urgency of subjective persecution, let alone objective persecution.

In the immigration proceedings, Doan argued that his petition for asylum is a factor contributing to his fear of persecution. Even when the petitioner's country would look unfavorably upon one of its citizens requesting asylum, the petitioner must offer *some* evidence that the country would persecute the petitioner upon his return as a result. *Kozulin v. INS*, 218 F.3d 1112, 1117-18 (9th Cir. 2000) (finding that Russian petitioner had not demonstrated a well-founded fear of persecution by showing that Russian law described fleeing to the United States and applying for asylum as treason, because petitioner offered no further evidence that modern Russia would enforce this law against him and the recent Country Reports indicated that modern Russia was not punishing similar petitioners).

Here, Doan argues that the Vietnamese government knows that he filed for asylum because he reported it to a Vietnamese-language newspaper in Tennessee, although the paper did not disclose his name. There is no evidence, however, that the Vietnamese government is aware that Doan

applied for asylum. Doan's name was not mentioned in the newspaper article, and there is no evidence that the Vietnamese government was aware of this newspaper or its contents.

Even if the Vietnamese government became aware that Doan had applied for asylum, there is no evidence that it would imprison him, as he asserts, or otherwise persecute him as a result. While the Country Reports indicate that returning citizens may be viewed suspiciously, there is simply no evidence that Vietnam persecutes its citizens because they applied for asylum in the United States. Doan's only proof is an email from his wife informing him that she could no longer teach in Vietnam. Doan argued that his wife was prohibited from teaching because the government did not want teachers spreading anti-Vietnam messages to their students. The immigration judge found that this email did not provide any information that his wife was prohibited from teaching *because* Doan applied for asylum.

A review of the email proves that the judge was correct. While the email may suggest that the government has been watching Doan closely since he publicly commented about the embezzlement trial and accused government officials of corruption, the email evidence alone is not so persuasive that it would compel a reasonable factfinder to conclude that the Vietnamese government was punishing Doan's wife, or that it knew that Doan had applied for asylum.

Thus, assuming all of Doan's factual allegations to be true, as it appears the immigration judge did, a reasonable factfinder would not be compelled to find that Doan has a well-founded fear of future persecution if he were to return to Vietnam. Accordingly, we affirm the immigration judge's conclusion that Doan has not shown a well-founded fear of future persecution.

**D. Doan's Withholding-of-Removal Claim**

A petitioner seeking withholding of removal must show that there is a clear probability that he will be subject to persecution if he were to return to his home country. *Koliada v. INS*, 259 F.3d 482, 487 (6th Cir. 2001). Thus, an "application seeking withholding of deportation faces a more stringent burden of proof than one for asylum." *Id.* Because substantial evidence supports the immigration judge's finding that Doan does not have a well-founded fear of future persecution, he therefore cannot satisfy the more exacting requirements for withholding of removal.

## III. CONCLUSION

For the preceding reasons, we hereby **DENY** the petition for review.