**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SPASKA STOIMENOVA NACHEVA; IVAN PANCHOV NACHEV; DESISLAVA IVANOVA NACHEVA; PANCHO IVANOV NACHEV, | No.   14-70135 |
| | Agency Nos.    A200-991-950 |
| Petitioners, | A200-991-951 |
| | A200-991-952 |
| v. | A200-991-953 |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 15, 2016[**]
San Francisco, California

Before:  MELLOY,[***] CLIFTON, and WATFORD, Circuit Judges.

---

      [*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      [**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

      [***]      The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

Petitioners Spaska Nacheva, her husband, Ivan Panchov Nachev, and their children, Desislava Ivanova Nacheva and Pancho Ivanov Nachev, are natives and citizens of Bulgaria. Nacheva and her family petition for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and relief under the Convention Against Torture. We have jurisdiction under 8 U.S.C. § 1252, and grant the petition.

Petitioners entered the United States on December 21, 2010. On June 20, 2011, Nacheva filed her application for asylum, withholding of removal, and relief under the Convention Against Torture. Nacheva sought relief due to her political opinion and membership in a particular social group. In a supplemental declaration included with Nacheva's application, she stated she was afraid to return to Bulgaria because she and her family would not be safe. Nacheva explained that the Bulgarian government harmed her because government officials believed she had documents implicating the prime minister and interior minister in corruption. Nacheva stated that on December 4, 2010, she was kidnapped and sexually assaulted and, during the attack, she passed out after one of the kidnappers struck her head against a table. Finally, Nacheva stated that her kidnappers showed her a picture of her daughter and told her, "I would hate

2

to see her and you end up working in a brothel in some God forsaken Middle Eastern country."

Nacheva testified before the IJ on March 29, 2012. Nacheva's testimony was consistent with her asylum application and supplemental declaration. In addition to Nacheva's testimony about the attack, Nacheva testified that she did not return to work after the attack. Nacheva further testified that she did not leave her house at all after the attack until she came to the United States on December 21, 2010. Nacheva testified that she has told only her husband and psychiatrist about the attack; she has not told her children or anyone else because it is too painful to talk about.

Nacheva testified that she and her family obtained tourist visas on November 22, 2010. Nacheva testified that their original plan was to visit relatives in the United States. Nacheva further testified that she is afraid she will be killed, kidnapped, or sent to be a prostitute with her daughter if she returns to Bulgaria.

Nacheva testified that she has not been able to work since coming to the United States and that she does not do anything with her time; her husband takes care of the children and her daughter cooks. On cross-examination, Nacheva testified that there was a posting online for her to work as a nanny. Nacheva explained that her daughter made the ad to try to get her out of the house and that she did not know what was written and could not work as a nanny.

In addition to Nacheva's testimony, Nacheva presented testimony from her psychologist, Dr. Lynlee Woodard, and submitted a psychological report prepared by Woodard based on her treatment sessions with Nacheva. Nacheva also submitted a psychological report prepared by Dr. Ruth Ann Wright, though Wright did not testify.

The IJ denied Nacheva's asylum application and other relief based on the IJ's adverse credibility determination. The IJ based his adverse credibility determination on a number of findings. In dismissing Nacheva's appeal, the BIA specifically relied on five of the IJ's findings: (1) that Nacheva testified she was unable to work but was impeached by the online ad for work as a nanny; (2) that Nacheva did not seek medical treatment after the sexual assault; (3) that the timing of Nacheva's psychological treatment was suspect; (4) that Nacheva's demeanor and non-responsiveness to questions supported an adverse credibility determination; and (5) that Nacheva's claim was implausible because of the timing of the attack and the timing of Nacheva's asylum application.

We review factual findings, including adverse credibility determinations, for substantial evidence. *Singh v. Holder*, 638 F.3d 1264, 1268–69 (9th Cir. 2011). "[O]nly the most extraordinary circumstances will justify overturning an adverse credibility determination." *Jin v. Holder*, 748 F.3d 959, 964 (9th Cir. 2014) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010)). "Where the BIA does not

4

independently review the record, or where the BIA relies upon the IJ's opinion as a statement of reasons, we look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Kozulin v. INS*, 218 F.3d 1112, 1115 (9th Cir. 2000). "[W]e do not review those parts of the IJ's adverse credibility finding that the BIA did not identify as 'most significant' and did not otherwise mention." *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008).

Substantial evidence does not support the first four of the IJ's findings. First, Nacheva testified on direct examination that she was unable to work but was impeached on cross-examination by an online ad, purportedly posted by Nacheva, looking for work as a nanny. Nacheva explained that her daughter posted the ad as an attempt to get her out of the house. However, the IJ did not address this explanation in his decision. As a result, this was not a proper basis for an adverse credibility determination. *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) ("If the alien offers a 'reasonable and plausible explanation' for the apparent discrepancy, the IJ must provide a specific and cogent reason for rejecting it." (quoting *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091–92 (9th Cir. 2009))); *see also Guo v. Ashcroft*, 361 F.3d 1194, 1201 (9th Cir. 2004) ("An adverse credibility finding is not based on substantial evidence when '[t]he BIA [or the IJ] did not comment on [an applicant's] explanation,

5

nor suggest any reason that it found his explanation not credible.'" (alterations in original) (quoting *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir. 1998))).

Second, Nacheva's failure to seek medical treatment cannot serve as substantial evidence for the adverse credibility determination because it requires improper speculation. *See Zhu v. Mukasey*, 537 F.3d 1034, 1039 (9th Cir. 2008) ("[T]he IJ's finding that petitioner's story was not plausible because, after being knocked unconscious and raped, a person would necessarily have gone to a doctor, is mere speculation and conjecture—not a proper basis for an adverse credibility finding."). That the IJ would have gone to a doctor after being raped has no bearing on Nacheva's credibility. Additionally, there are many reasons a rape victim may choose not to go to a doctor, such as not wanting a police report filed because the rapist is a powerful person, as in Nacheva's case. This further supports the rejection of this type of speculation in an adverse credibility determination. Accordingly, the fact that

Nacheva did not seek medical treatment was not a proper basis for an adverse credibility determination.[1]

Third, the finding that the timing of Nacheva's psychological treatment is suspect is not supported by substantial evidence. The IJ found it suspect that Nacheva did not seek psychological treatment until October 2011, after her asylum application was referred to the Immigration Court. However, in the psychologist report the IJ cites in his opinion, by Dr. Ruth Ann Wright, Wright notes that Nacheva's "symptoms of depression have been present and increasing in severity over the last ten months since the sexual assault and threats against her daughter were made." The IJ failed to acknowledge the increasing severity of Nacheva's symptoms as an explanation for the timing of Nacheva's decision to seek psychological help.

Further, because the IJ found that the timing of Nacheva's psychological treatment was suspect, the IJ was required to provide Nacheva an opportunity to

---

[1] *See, e.g.*, *Zhu*, 537 F.3d at 1046 (Gould, J., concurring) ("[R]egrettably, in many parts of the world, a young woman's report of a rape is likely to bring shame and discredit upon her and her family, as much as it is likely to result in any prosecution of the wrongdoer. Because the victim may be blamed for a rape or in any event subjected to some level of disgrace for it, it is understandable that a young woman like Petitioner . . . might prefer to maintain silence about a rape. This is all the more so where the rapist is a powerful person in the community. And where recourse to medical treatment is likely to cast a spotlight on the rape with all attendant consequences, it is no wonder that a young woman in such circumstances might not only remain mum but also pass up the possibility of a doctor's help.").

explain. *See Soto-Olarte*, 555 F.3d at 1092 ("In any event, the IJ could not properly base her adverse credibility determination on the inconsistencies between Soto-Olarte's testimony and the police report that Soto-Olarte did not explain in his declaration, when she did not ask Soto-Olarte about these discrepancies or give him an opportunity to reconcile them."); *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) ("[T]he IJ must provide a petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum." (internal quotation marks and citation omitted)). Because the IJ failed to give Nacheva an opportunity to address the timing of her psychological treatment, and failed to consider the full information in the psychological reports, the timing of Nacheva's psychological treatment cannot support the IJ's adverse credibility determination. *Shrestha*, 590 F.3d at 1044 ("To ignore a petitioner's explanation for a perceived inconsistency and relevant record evidence would be to make a credibility determination on less than the total circumstances in contravention of the REAL ID Act's text.").

Fourth, the IJ's finding that Nacheva's demeanor and unresponsiveness supported an adverse credibility determination is not supported by the record. "We give 'special deference' to a credibility determination that is based on demeanor." *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999). However, "while a general

8

finding based on 'demeanor' is accorded deference, under our case law, an IJ's determination that a petitioner's testimony is 'evasive' or 'unresponsive' may be insufficient to support an adverse credibility finding. While these judgments will usually encompass extensive non-verbal behavior or patterns of speech, we have held that they are, nevertheless, subject to review by comparison with the inert transcript." *Jibril v. Gonzales*, 423 F.3d 1129, 1137 (9th Cir. 2005). "Where the record does not obviously show that the petitioner was evasive or unresponsive, our precedent instructs us not to accord deference to the IJ's demeanor finding, no matter how likely it was to have been supported by non-verbal, and therefore non-textual, factors." *Id.*

In this case, the IJ found that Nacheva did "not impress as someone with more than 10 years of experience as a trial lawyer. She also did not impress as having the thought process of a trained lawyer, or the ability to answer questions skillfully and directly that one might expect from a trained lawyer." The IJ did not make inferences based solely on Nacheva's demeanor and did not point to non-verbal cues in his opinion. *Cf. Paredes-Urrestarazu v. INS*, 36 F.3d 801, 818 (9th Cir. 1994) (holding that an IJ is entitled to special deference when "[t]he IJ's factual premise . . . is based solely on his purported eye-witness observation of Petitioner's reactions, [and] rests on inferences drawn *exclusively* from the petitioner's demeanor" (emphasis in original)). Rather, the IJ's observations were based on the nature of Nacheva's

9

responses to questions on cross-examination, and thus can be reviewed by comparison to the hearing transcript. *See Jibril*, 423 F.3d at 1137.

The IJ stated that Nacheva's "demeanor changed" on cross-examination, without citing any non-verbal behavior on which he was relying. The IJ then stated that Nacheva was unresponsive to three questions. A review of the transcript, however, shows that Nacheva answered those questions. The IJ did not "identify particular instances in the record where the petitioner refused to answer questions asked of [her]." *Singh v. Ashcroft*, 301 F.3d 1109, 1114 (9th Cir. 2002). Because the IJ's finding regarding Nacheva's demeanor was based on Nacheva's responses to questions rather than on non-verbal cues, a review of the hearing transcript shows that the IJ's determination does not warrant the special deference usually accorded to demeanor determinations. As a result, this basis for the IJ's adverse credibility determination is not supported by substantial evidence.

Having found the first four bases for the IJ's adverse credibility determination to be either improper or unsupported by substantial evidence, we now address the implausibility of Nacheva's claim. The IJ found Nacheva's claim inherently implausible because (1) Nacheva waited several months to file her asylum application; and (2) the attack did not occur until after Nacheva already had a non-immigrant visa to come to the United States.

First, the IJ found Nacheva's claim implausible because "the severity and recency of the allegations raised by [Nacheva] in her past prosecution claim would suggest that her first priority upon arrival in the United States, in December 2010, would be to request asylum." The IJ noted that Nacheva's application was timely, but, nevertheless, drew a negative inference from the fact that Nacheva and her husband started a family business in January 2011 but waited six months before applying for asylum.

Under 8 U.S.C. § 1158(a)(2)(B), an asylum applicant has one year to file an application. Nacheva filed her application on June 20, 2011, about six months after she arrived in the United States and within the one year time limit set by the statute. We have held that "an IJ may not speculate as to why an alien did not apply for asylum immediately upon entry to the United States." *Karouni v. Gonzales*, 399 F.3d 1163, 1177 (9th Cir. 2005). Further, if the IJ felt that the timing of Nacheva's application was implausible, he was required to give Nacheva the opportunity to explain. Without affording Nacheva that opportunity, the IJ could not base the adverse credibility determination on the timing of the application. *See Soto-Olarte*, 555 F.3d at 1092; *see also Tekle*, 533 F.3d at 1052 n.3 ("[T]he IJ speculated that because Tekle applied prior to, but near, the one-year asylum filing deadline, her asylum claim was not credible. The IJ's finding is not supported by logic, much less

11

substantial evidence in the record."). Finally, Nacheva retained an attorney to assist in the application process. It is improper to speculate about what an attorney would have advised; any filing delay may have been the result of advice from Nacheva's attorney or the attorney's workload. *Cf. Karouni*, 399 F.3d at 1177. Accordingly, the timing of Nacheva's asylum application was an improper basis for the IJ's adverse credibility determination.

Because the bases discussed above were improper or unsupported by substantial evidence, the only possible basis to support the IJ's adverse credibility determination is the IJ's finding that the timing of the attack is implausible. Considering all the evidence presented, including Nacheva's consistent and detailed testimony, the IJ could not permissibly infer that Nacheva's claim that she was attacked is implausible, even considering the timing. Nacheva consistently represented the timing of her decision to apply for asylum in the United States. Nacheva also consistently testified on direct examination, cross-examination, and redirect that she and her family were planning a trip to the United States to visit relatives when they obtained their visas and that they did not originally plan to remain in the United States. Nacheva testified in detail about the attack and stated that she was attacked because, on November 30, 2010, eight days after she obtained her visa, she met with a man who opposed the government. Further, the two psychological reports Nacheva submitted stated that

12

Nacheva presented symptoms consistent with someone who was attacked as Nacheva claims she was. Finally, as the IJ noted, Nacheva testified consistently with her written declaration.

"While the REAL ID Act's 'totality of the circumstances' standard is permissive as to the breadth of factors that may form the basis of an adverse credibility determination, the totality of the circumstances approach also imposes the requirement that an IJ not cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result." *Shrestha*, 590 F.3d at 1040. The IJ did not explain why, in light of all the evidence, the timing of the attack was still implausible. Further, the IJ did not address the psychological reports in his implausibility finding. Rather than considering the timing of the attack in light of "the totality of the circumstances, and all relevant factors," 8 U.S.C. § 1158(b)(1)(B)(iii), the IJ "cherry-pick[ed]" facts that supported an adverse credibility determination and ignored other evidence that undermined that determination. *See Shrestha*, 590 F.3d at 1040. Further, the IJ "speculated about [Nacheva's] 'real' motives" when she and her family applied for non-immigrant visas. *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1052 (9th Cir. 2002). An IJ may not base a decision on personal conjecture or speculation. *Id.*

To support the implausibility finding, the IJ also focused on the fact that Nacheva's husband and children did not testify to corroborate Nacheva's claim that the family lacked intent to permanently remain in the United States when they applied for their visas. When an IJ finds that corroborative evidence is necessary, he "must provide [the] applicant with notice and an opportunity to either produce the evidence or explain why it is unavailable before ruling that the applicant has failed in his obligation to provide corroborative evidence." *Ren v. Holder*, 648 F.3d 1079, 1090 (9th Cir. 2011). When lack of corroboration is a basis for an adverse credibility determination, *Ren*'s notice-and-opportunity requirement still applies. *Bhattarai v. Lynch*, 835 F.3d 1037, 1043 (9th Cir. 2016). Specifically, "when the IJ or BIA 'relied on the lack of corroboration as part of [an] overall credibility determination[,] and, on review, we reject[ ] each of the IJ's other reasons—besides lack of corroboration—for the adverse credibility finding,' the denial of relief cannot stand unless the IJ satisfied *Ren*'s requirements." *Id.* (alterations in original) (quoting *Lai v. Holder*, 773 F.3d 966, 976 (9th Cir. 2014)).

In cases like *Ren* and *Bhattarai,* where the adverse credibility determination is based, in part, on the lack of corroborating evidence, our review requires a two-step analysis. *Bhattarai*, 835 F.3d at 1043.

14

First, we separate out the non-corroboration grounds for the adverse credibility determination and evaluate whether the IJ and BIA's determination is supported by substantial evidence. If it is, we defer to the IJ and BIA's adverse credibility determination. But if we overturn that determination, and only issues regarding lack of corroboration remain, we next ask whether the IJ satisfied *Ren*'s notice requirement. If the IJ did not provide the applicant notice of the specific corroborative evidence that was required and an opportunity to provide it or explain why he cannot reasonably obtain it, we remand for the IJ to give the applicant that opportunity.

*Id.* at 1043–44.

As discussed above, the BIA adopted the IJ's adverse credibility determination based on five findings. We find that the first four bases either rest on impermissible grounds for an adverse credibility determination or are unsupported by substantial evidence. Thus, we do not defer to the IJ and BIA's adverse credibility determination. The only issue remaining is lack of corroborating evidence regarding Nacheva's intent when she applied for a non-immigrant visa. The IJ did not give Nacheva notice of what corroborative evidence was necessary. Though the IJ asked Nacheva about the online ad for her to work as a nanny and her career as a lawyer, the IJ did not ask about Nacheva's intent when she applied for her non-immigrant visa. Further, at the end of the hearing, the IJ discussed what corroborative evidence was necessary but mentioned only evidence regarding Nacheva's career as a lawyer.

15

We agree that Nacheva's husband and children may have corroborated Nacheva's claim regarding when she decided to permanently remain in the United States. "However, the [IJ and] BIA's reliance on the absence of testimony from [Nacheva's family] was error under *Ren* because the IJ did not give [Nacheva] notice and an opportunity to present the corroborative testimony before denying [her] asylum application." *Bhattarai*, 835 F.3d at 1046. As a result, the IJ and BIA improperly relied on the lack of corroborating evidence in denying relief.

Accordingly, all five bases for the IJ and BIA's adverse credibility determination are either unsupported by substantial evidence or rely upon impermissible factors. Further, the IJ and BIA erred in relying on the absence of corroborating evidence without giving Nacheva notice and an opportunity to present that evidence.

**PETITION FOR REVIEW GRANTED AND REMANDED.**