NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 8 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VARINDER SINGH, AKA Barinder Singh, AKA Valinder Singh, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 19-71370 <br><br> Agency No. A205-585-584 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 6, 2022**
Pasadena, California

Before: M. SMITH, BADE, and VANDYKE, Circuit Judges.

Varinder Singh petitions for review of the Board of Immigration Appeals'

("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") decision

denying his application for asylum, withholding of removal, and protection under

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

the Convention Against Torture ("CAT").  We have jurisdiction under 8 U.S.C. § 1252.  "We review the denial of asylum, withholding of removal and CAT claims for substantial evidence," *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019), and deny the petition.

1.  Substantial evidence supports the agency's denial of asylum and withholding of removal.  To establish past persecution, an applicant must show that he was persecuted "on account of one or more protected grounds."  *Guo v. Sessions*, 897 F.3d 1208, 1213 (9th Cir. 2018) (citation omitted).  To be eligible for asylum, the protected ground must be "one central reason" for the persecution.  8 U.S.C. § 1158(b)(1)(B)(i).  And to be eligible for withholding of removal, the protected ground need only be "a reason" for the persecution.  *Id.* § 1231(b)(3)(C). The agency concluded that Singh did not establish that a protected ground was one central reason, or a reason, for the harm he suffered; substantial evidence supports this result.

Singh first argues that members of the Akali Dal Badal Party (the "Badal party") imputed an anti-Badal political opinion to him and that he was harmed because of this imputation.  We disagree.  There is no direct evidence that the Badal party imputed a political opinion to Singh in 2012.  *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1031–32 (9th Cir. 2014) (as amended).  Singh points to the Badal party's statement that he was sending money "to a Sikh, separatist, political

2

party in Punjab," but he does not explain how an accusation made five years after he was personally harmed in India demonstrates that he was harmed on account of an imputed political opinion.

The indirect evidence—Singh's refusal to give his family's land to the Badal party—does not "compel a conclusion contrary to that reached by the BIA." *See id.* at 1032. Singh admitted that the Badal party "wanted to confiscate" his family's land because it is in "an excellent location," and the Badal party "will threaten" anyone with "land on a good location." *See Zetino v. Holder*, 622 F.3d 1007, 1015–16 (9th Cir. 2010) (concluding a petitioner did not show that the harm he suffered—"bandits attempting to steal his grandfather's farm" and "murder[ing] his family"—was on account of a protected ground because "the farm was on fertile" and "valuable" land, and he "implied that the only motivation for the murders was the land itself"). Singh does not identify anything in the record that shows that the Badal party considers those who resist its demands for land to be political adversaries. *See Kozulin v. INS*, 218 F.3d 1112, 1117 (9th Cir. 2000). Nor does Singh assert that he associated with anyone who was known by the Badal party to hold a particular political view. *See Navas v. INS*, 217 F.3d 646, 659 (9th Cir. 2000). Thus, the agency reasonably concluded that Singh was not persecuted on account of an imputed political opinion.

Substantial evidence also supports the agency's determination that Singh did

not establish past persecution on account of his Sikh religion under either the asylum or withholding of removal standards. Singh points to the arrest of his father in 2017, arguing that "the significance of [Punjabi officers using his father's turban to tie his arms at his back] cannot be overstated." But Singh does not explain how an incident occurring five years after he was personally harmed in India demonstrates that he suffered past persecution on account of his religion.

Singh next contends that he was persecuted based on his membership in two proposed social groups: his immediate family and "landowners in Punjab." The agency found that neither of Singh's proposed social groups were legally cognizable, and Singh does not contest these findings on appeal. Thus, Singh waives any challenge to the agency's conclusion that his proposed social groups are not legally cognizable. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004). Because the existence of a cognizable social group is an essential element of claims for asylum and withholding of removal based on this protected ground, *see Reyes v. Lynch*, 842 F.3d 1125, 1132 n.3 (9th Cir. 2016), the agency's unchallenged determination is dispositive.

Moreover, the record does not compel a conclusion that Singh's fear of future persecution is objectively reasonable. Singh points to a 2017 incident involving his father and brother to argue that he would be harmed on account of his Sikh religion or an imputed anti-Badal opinion if returned to India. But the IJ

4

ascribed "limited weight" to the primary evidence recounting the 2017 incident—his father's and neighbor's affidavits—and Singh does not challenge that finding on appeal. *See Singh*, 361 F.3d at 1157 n.3. Singh argues that his "reaction" to the affidavits is "sufficient to confer refugee status," but he cites no legal authority to support this argument and we do not find it persuasive enough to compel a conclusion that Singh's fear of future persecution is objectively reasonable.[1]

2. Substantial evidence supports the agency's denial of CAT relief. The agency reasonably concluded that the past harm Singh endured, although reprehensible, did not amount to "torture." *See* 8 C.F.R. § 208.18(a)(2) (defining torture as "an extreme form of cruel and inhuman treatment"); *see Vitug v. Holder*, 723 F.3d 1056, 1061, 1066 (9th Cir. 2013) (concluding that five beatings, two of which were "severe," and economic deprivation did not compel a finding that a petitioner would be tortured). Singh does not explain how what happened to his brother in 2017 demonstrates that he "would be subject to a '*particularized threat of torture*'" if returned to India. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (per curiam) (citation omitted). And Singh's argument that the agency failed to "do the required analysis when [it] concluded that [he] had failed to

---

[1] Because Singh does not prove an objectively reasonable fear of persecution, which is necessary to compel a finding of eligibility for asylum, Singh fails to meet the higher "clear probability" standard for withholding of removal. *See Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006).

demonstrate that he could avoid persecution through relocation" is meritless

because the authorities he relies upon pertain to asylum, not CAT relief. *See*

*Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 705 (9th Cir. 2022) ("[T]he asylum

and CAT regulations with respect to the relocation factor 'differ markedly.'"

(citation omitted)).

**PETITION FOR REVIEW DENIED**.